William **COOPER**, Appellant,

v.

Dennis **CORDERMAN**, et al., Respondents.

No. WD 42760.

Missouri Court of Appeals, Western District.

Jan. 15, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 5, 1991.

Application to Transfer Denied June 11, 1991.

William Cooper, Jefferson City, pro se.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondents.

Before LOWENSTEIN, SHANGLER and MANFORD, JJ.

LOWENSTEIN, Judge.

Appellant William Cooper, acting *pro se*, appeals from an order dismissing his petition asking for a temporary restraining order and damages.

On July 11, 1989, Cooper, a prisoner at the Missouri Training Center for Men, (MTCM), filed a petition for preliminary injunction against three members of the MTCM staff, claiming they violated his constitutional rights by restricting the amount of legal papers he could keep in his cell. In the suit Cooper named as defendants Sergeant Dennis Corderman; James Gammon, Assistant Superintendent; and Sherry Blattel, Functional Unit Manager. These MTCM employees were implementing divisional policy 120.010 subsection (5), which allows legal papers to be removed from a prisoner's cell when they constitute a fire, safety or security hazard. Cooper also complains his rights are infringed by subsection (6), which outlines procedures that secure the papers and that give the inmate access to them.[1]

1. (5) In the event a fire and safety official determines that the amount of property in an inmate's cell constitutes a fire, safety or security hazard, the fire and safety official will notify the institution head, or designate, in writing. The institution head-designate will order the inmate to reduce his property as indicated by the fire and safety official.

(A) Paper items will be the first items to be removed due to their high combustibility rate. Nonlegal paper materials will be reduced first. If, after this reduction, there is still an unacceptable fire, safety or security hazard presented by the remaining legal materials, the legal materials shall also be reduced ...

(6) If legal materials are considered excessive, and are removed as a fire, safety or security hazard from an inmate's living area, the following procedures will be utilized to provide for the inmate's access to, and security of, such materials.

(A) The inmate will be informed as to the amount of legal material he/she may retain in possession and will be given up to two weeks to organize and inventory the legal material.

1. All material must be placed by the inmate in legal sized accordion folders with flap which may be purchased from the inmate canteen.

2. All folders will be labeled with the case number and name and the flap will be secured.

3. The inmate will develop a complete inventory list on the institutional property inventory form. The original will be placed in the inmate's personal property file, one copy will be retained by the inmate and one copy will be placed with the legal material.

4. The staff taking charge of the materials will check the inventory list against the folder labels to ensure all is accurate and both the inmate and staff will sign the form. These materials will then be stored in a secure area.

(B) In the event the inmate refuses to organize and inventory the legal material within the two week period, a conduct violation will be written and such material will be picked up by designated staff (at least two) and placed into storage containers.

1. The containers will be labeled with the inmate's name and number and marked "LEGAL MATERIALS" and stored in the designated storage area. The staff impounding the material will not read nor inventory the material.

2. Impounding staff will submit a memorandum to the Assistant Superintendent of Programs concerning the incident and will attach a copy to the conduct violation report.

3. Inmates will not have access to such material until they agree to properly organize and inventory the material. At such time the inmate will be granted a reasonable amount of time for this activity.

4. Although the inmate receives a conduct violation, under no circumstances will any legal material be destroyed or removed from the institution.

(C) Inmates may request legal material at any time upon showing written documentation that a court deadline exists. The inmate may also request materials from the storage area once each month by:

1. trading an equivalent amount of legal material; or

2. showing that an equivalent amount of legal material has been removed.

(D) Segregation inmates will have the requested legal material delivered to them. General population inmates will be responsible for contacting the staff person in charge of the storage area and requesting the material per

On several occasions, Corderman and Blattel told Cooper all but two boxes of his legal materials must be stored in the MTCM property room. Cooper complained to Assistant Superintendent Gammon about this policy, arguing that being restricted to two legal boxes in his cell prohibited him from adequately pursuing his *ten* pending legal actions in State and Federal courts. Gammon gave no relief to Cooper. Cooper also alleges he has been subject to discipline because of his failure to comply with the policy.

Cooper filed this petition for a temporary restraining order and $12,500 damages. Respondents' answer contained a motion to dismiss and affirmative defenses based on failure to state a claim upon which relief could be granted and the doctrine of official immunity, claiming they were acting in a non-discretionary manner in carrying out institutional policies.

At the hearing for pretrial motions, Cooper requested permission to amend his petition to include additional defendants, Dale Riley, Myrna Trickey and George Lombardi, because they drafted the divisional policy he challenges. The judge implied he would rule on Cooper's request if he did not grant respondent's motion to dismiss.

The judge ultimately granted respondent's motion to dismiss because it did not state a claim in that Cooper failed to allege a crucial element of the divisional policy. The court also noted that Cooper's complaint was with the policy itself and not its execution. The judge reasoned that since none of the respondents were responsible for promulgating the policy, they were not proper defendants. The court further reasoned that Cooper was not denied access to his legal materials, but that he was merely prohibited from keeping all of them in his cell.

As his only point of error Cooper alleges the trial court "abused its discretion and authority in dismissing petition for failure to state a claim against any prison employee where (1) appellant requested to join additional respondents and (2) named respondents arbitrarily enforced challenged established institutional rules. (Emphasis added.)

prison policy and retaliated against appellant by confiscating legal materials for his ongoing law-related activities in contravention of his constitutional rights to freedom of speech, due process, equal protection and fundamental fairness, Missouri and United States Constitutions."

The scope of review for a motion to dismiss for failure to state a claim requires an examination of plaintiff's petition, allowing the petition its broadest intendment, treating all facts alleged as true, construing the allegations favorably to determine whether they invoke principles of substantive law. *Gaines v. Monsanto*, 655 S.W.2d 568, 570 (Mo.App.1983). This court is not required, however, to accept petitioner's conclusions as true. *Counts v. Morrison–Knudsen, Inc.*, 663 S.W.2d 357, 360 (Mo. App.1983). On appeal, the trial court will be affirmed if any grounds asserted for dismissal are valid. *Lipton Realty, Inc. v. St. Louis Housing Authority*, 705 S.W.2d 565, 568 (Mo.App.1986).

Respondents contend that Cooper's petition should have been dismissed because he failed to state a claim in that he did not allege a total denial of access to legal materials other than the two boxes in his cell. Divisional policy 120.010(6)(c) allows inmates access to legal materials once each month or also at any time upon showing written documentation that a court deadline exists.

Prison staff must provide inmates with meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *State v. Rollie*, 585 S.W.2d 78, 87–88 (Mo. App.1979). Prison regulations that restrict an inmate's right of access to the courts must be balanced against "the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials." *Williams v. Wyrick*, 747 F.2d 1231, 1232 (8th Cir.1984), citation omitted. A correctional institution may place reasonable restrictions on an inmate's right to legal materials or legal

assistance based on the institution's legitimate interest in security. *Id.* Furthermore, an inmate's "right to present and prepare legal matters is one which he must exercise in a reasonable manner, and within the institution's rules concerning inmate's possessions." *Konigsberg v. Ciccone,* 285 F.Supp. 585, 599, aff'd 417 F.2d 161, cert. den. 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (1970). The mere fact that Cooper is inconvenienced by the divisional policy does not amount to a denial of meaningful access to the courts. The inmate is denied access to only some of his legal materials, and can determine which to keep in the cell. The procedure for retrieval of the other documents does not limit access to counsel or the courts. *Murphy v. Dowd,* 757 F.Supp. 1019 (E.D.Mo.1990). The trial court did not abuse its discretion in granting respondents' motion for failure to state a claim. Because this reason is valid for dismissal, this court need not reach the issue of whether the trial court should have allowed Cooper to join the policy drafters as defendants.

Affirmed.