494 S.E.2d 503

STATE of West Virginia ex rel.
William A. JAMES, et al.

v.

Nicholas J. HUN, Commissioner, Division
of Corrections; William C. Duncil, War-
den, Huttonsville Correctional Center
and Steve Yardley, Warden, Denmar
Correctional Center.

Nos. 24144, 24145, 24146, 24147 and 24148.

Supreme Court of Appeals of
West Virginia.

Decided Oct. 3, 1997.

William A. James, Lloyd D. Buckhannon,
Robert Fitzgerald, Greg Fullerton, Demrt-
rice Johnson, Ismael Velorquz, Jamal A.
Azeez, Rusty Allen Bennett, Jackie R. Smith,
Lloyd H. Eanes and William Warner Stanley,
II, pro se.

Leslie Kaiser, Division of Corrections,
Charleston, for Nicholas J. Hun, William C.
Duncil and Steve Yardley.

PER CURIAM:

Petitioners, William A. James, Lloyd D.
Buckhannon, Robert Fitzgerald, Greg Fuller-
ton, Demrtrice Johnson, Ismael Velorquz,
Jamal A. Azeez, Rusty Allen Bennett, Jackie
R. Smith, Lloyd H. Eanes and William War-
ner Stanley, II, *pro se,* request this Court to
issue a writ of mandamus to be directed
against the respondents, Nicholas C. Hun,
Commissioner, Division of Corrections; Wil-
liam C. Duncil, Warden, Huttonsville Correc-
tional Center and Steve Yardley, Warden,
Denmar Correctional Center, based upon al-
leged infringements upon the petitioners'
right of meaningful access to the courts.
For reasons explained below, we decline to
issue a writ of mandamus.

The petitioners, who are inmates at the
Huttonsville Correctional Center,[1] complain
that the respondents' policy that no inmate,

---

1. According to one of the petitioners, at least one
of the petitioners has been moved from the Hut-
tonsville Correctional Center to another correc-
tional facility during the course of events leading
up to this order.

A reply was filed on behalf of the petitioners
restating the allegations contained in the record
before this Court.

whether a "legal clerk"[2] or not, could possess another inmate's legal documents, prevents inmates from having meaningful access to the courts. As explained by the petitioners, this policy inhibits "legal clerks" from providing adequate legal assistance to other inmates. The petitioners further complain about a policy that allows inmates to possess only "current legal documents" in their dormitory rooms. The petitioners allege that prison officials are determining which documents are "current legal documents" and are confiscating and/or destroying those documents which they deem not to be "current legal documents."

Conversely, the respondents assert that Huttonsville Correctional Center's policy N–109 does not state that inmates may only possess "current legal documents." Instead, policy N–109 limits each inmate to a locker box and two large plastic containers in which they may store their personal property. Thus, any legal documents possessed by an inmate must fit in these storage containers. Additionally, policy N–109 outlines the number of various items that each inmate may possess as personal property. If an inmate possesses property in excess of the limits under policy N–109 or property which is unauthorized, then a prison official will confiscate such property.

The purpose of this policy, according to an affidavit signed on September 8, 1997, by William C. Duncil, Warden of Huttonsville Correctional Center, is "to prevent fire hazards, insect infestation, and other problems associated with numerous stacks of paper kept in close living quarters." As explained by the respondents, the inmates at Huttonsville Correctional Center live dormitory style so it is important that there be limits on the amount of personal property an inmate may possess in his living quarters.

Mr. Duncil also states in his affidavit that the petitioners "did not have their personal legal papers taken from them. The only documents taken were those belonging to other inmates and upon the taking, the documents were given to those said inmates."

Moreover, Mr. Duncil states that "[t]he counselors, correctional officers, and other staff do not decide which legal materials [as long as the legal materials belong to the inmates] the inmates are allowed to keep; rather, the inmates themselves make the decision as to which documents to keep and which to forfeit."

Lastly, Mr. Duncil states in his affidavit that inmates have access to "legal clerks" who provide inmates with assistance in legal research and guidance in court proceedings. There is apparently no limitation on "legal clerks" examining another inmate's legal documents during the course of their work. As explained above, the only limitation on the "legal clerks" is that they may not possess another inmate's legal documents in their dormitory room.

An inmate's constitutional right of meaningful access to the courts was discussed in the landmark case of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). As the Supreme Court of the United States explained, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498, 52 L.Ed.2d at 83 (footnote omitted).

This Court has expressly acknowledged that "[i]t is clear that from a constitutional standpoint arising out of the Fourteenth Amendment's due process considerations that a right of meaningful access to the courts is required." *Hickson v. Kellison*, 170 W.Va. 732, 736, 296 S.E.2d 855, 859 (1982) (*citing Bounds, supra*). Moreover, article III, section 17 of the *West Virginia Constitution* provides: "The courts of this State shall be open, and every person, for any injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

---

**2.** "Legal clerks" are inmates who provide other inmates "with both assistance in legal research and guidance in proceedings to court[.]" Huttonsville Correctional Center Policy and Procedure U104.

The Jail and Correctional Facility Standards Commission has promulgated rules which seek to ensure that inmates have meaningful access to courts. For instance, 95 C.S.R. 3–14.3 (1993) states, in pertinent part, that

> [t]here shall be no restricting or interfering with jailhouse lawyers or with inmates attempting to assist other inmates in legal matters, or in preparing written communications. Facility staff shall ensure that such interaction of inmates can occur to the maximum extent possible, subject only to legitimate safety and security concerns.[3]

(footnote added). Additionally, 95 C.S.R. 3–14.1 (1993) states that "[i]nmates shall have unlimited access to courts and be allowed to address uncensored communication to governmental authorities. Inmates seeking judicial or administrative redress shall not be subjected to reprisals or penalties as a consequence."

Clearly, state officials must take affirmative action in assuring inmates meaningful access to the courts. However, this right of meaningful access to the courts is not completely unfettered. As noted by the Supreme Court of the United States in *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718, 724 (1969),

> the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities.

*See also Williams v. Wyrick*, 747 F.2d 1231, 1232 (8th Cir.1984) (Any regulations restricting an inmate's right of access must be balanced against " 'the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials.' " (citation omitted)).

Indeed, in a case similar to the one before us, the Missouri Court of Appeals concluded that a prison policy restricting the amount of legal materials that inmates could keep in their individual cells did not from a constitutional standpoint deny inmates meaningful access to the courts. *Cooper v. Corderman*, 809 S.W.2d 11 (Mo.Ct.App.), *cert. denied*, 502 U.S. 944, 112 S.Ct. 385, 116 L.Ed.2d 336 (1991). As the court in *Cooper* explained "[a] correctional institution may place reasonable restrictions on an inmate's right to legal materials or legal assistance based on the institution's legitimate interest in security. . . . The mere fact that [an inmate] is inconvenienced by the divisional policy [restricting the amount of paper that could be kept in an inmate's cell] does not amount to a denial of meaningful access to the courts." *Id.* at 13–14 (*citing Williams*, 747 F.2d at 1232).

This Court cited *Cooper* with approval in *State ex rel. Osborne v. Kirby*, No. 23982 (July 11, 1997) (per curiam order). In *Kirby* this Court concluded that a correctional facility's limit on the amount of legal papers an inmate may possess while in segregation did not deprive the inmate of his right of meaningful access to the courts.

■ Likewise, we conclude that Huttonsville Correctional Center policy N–109, which limits the amount of personal property, including legal documents, which an inmate may possess to that which he can fit into a locker box and two large plastic containers, is a reasonable restriction on an inmate's right of meaningful access to the courts. As we stated previously, Mr. Duncil makes clear in his affidavit that the purpose of this policy is "to prevent fire hazards, insect infestation, and other problems associated with numerous stacks of paper kept in close living quarters."

■ Moreover, we do not find it unreasonable for respondents in implementing this policy to prohibit inmates, including "legal clerks," from possessing another inmate's legal documents. Mr. Duncil states that only legal documents belonging to another inmate are confiscated and that these documents are returned to the inmate to whom the docu-

---

**3.** The Jail and Correctional Facility Standards Commission promulgated 95 C.S.R. 3 *et seq.* pursuant to its authority in *W.Va.Code,* 31–20–9 [1993].

ments belong. Mr. Duncil further states that the inmates, not the prison officials, make the decision as to which documents to keep and which to forfeit. Most importantly, Mr. Duncil makes clear that the inmates have access to the "legal clerks" who are to "provide inmates with both assistance in legal research and guidance in proceedings to court[.]" Huttonsville Correctional Center Policy and Procedure U104.

In syllabus point 2 of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969) this Court held:

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Given that the respondents' restrictions are reasonably related to a legitimate prison ad-

ministration interest of preventing fire hazards, insect infestation, and other problems associated with numerous stacks of paper kept in close living quarters and given that the "legal clerks" are to provide assistance to other inmates in research and guidance in court proceedings, we conclude that the petitioners have not been denied meaningful access to the courts. Accordingly, because the petitioners have failed to show that any of the above three elements listed in syllabus point 2 of *Kucera, supra,* are present, we decline to award a writ of mandamus.[4]

Writ denied.

---

4. One of the petitioners raised several other issues relating to prison library hours and copier use after we issued a rule to show cause against the respondents.

Mr. Duncil states in his affidavit that the Huttonsville Correctional Center's law library is open and available to inmates between the hours of 8:00 a.m. and 11:30 a.m. and from 1:00 p.m. to 3:00 p.m. Monday through Thursday and until 2:30 p.m. on Fridays. Moreover, one of the petitioners submitted a memorandum written by Mr. Duncil which implies that inmates, who because of work are unable to meet with the "legal clerks" during the normal library hours, may meet with a "legal clerk" on weekends and holidays. Additionally, one of the petitioners submitted a memorandum written by Clinton W. Semmler, associate warden of Huttonsville Correctional Center, which states that "legal clerks" have access to a copier from 10:00 a.m. to 2:00 p.m. Monday through Friday. Based on these facts, we find these issues to be without merit.

One petitioner also raises several other issues. For example, he complains about the type of ballpoint pen the prison provides to inmates. We find these issues to be without merit.