633 S.E.2d 771

Dwight L. MATHENA, Roger Sullivan, Patrick W. Few, Jack Grimes, Jr., Kenneth Bennett, Jeffrey L. Wolfe, Kenneth Powell, Steven Cogar, Jason Lawson, and Eugene Blake, Petitioners Below

Jason Lawson and Eugene Blake, Appellants

v.

William S. HAINES, Warden, Huttonsville Correctional Center, Respondent Below, Appellee.

No. 32769.

Supreme Court of Appeals of West Virginia.

Submitted May 10, 2006.

Decided June 26, 2006.

Dissenting and Concurring Opinion of Justice Maynard June 28, 2006.

Jason E. Huber, Forman & Huber, L.C., Charleston, for Appellants.

Darrell V. McGraw, Jr., Attorney General, John H. Boothroyd, Assistant Attorney General, Charleston, for Appellee.

STARCHER, J.:

Appellants Jason Lawson and Eugene Blake appeal from an order entered by the circuit court of Randolph County enjoining appellant Eugene Blake from filing any motions, letters, or communication to the circuit clerk or the circuit court unless such documents are signed by an attorney licensed to practice law in the State of West Virginia. Appellants Lawson and Blake include in their petition for appeal the issues which were included in the underlying conditions and medical care habeas corpus petition. Appellants Lawson and Blake also appeal the ruling of the circuit court relating to prison conditions and medical care issues raised in the underlying habeas corpus case. For the reasons set forth below, we reverse, in part, and affirm, in part.

I.

*Facts & Background*

On January 11, 2001, Patrick W. Few, Dwight L. Mathena, Roger Sullivan, Jack Grimes, Kenneth Bennett, Jeffery L. Wolf, and Kenneth Powell filed a petition for writ of habeas corpus in the circuit court of Logan County. On the same date the circuit court of Logan County entered an order transferring the case from Logan County to Randolph County.[1] On February 13, 2001, Dwight L. Mathena, Steve Cogar, Jason Lawson, Eugene Blake, and Patrick Few filed a petition for writ of habeas corpus in the circuit court of Mercer County. Also, on that same day the circuit court of Mercer County entered an order transferring the case from Mercer County to Randolph County. All petitioners were inmates in the Huttonsville Correctional Center.

On June 6, 2001, Eugene Blake was transferred from the Huttonsville Correctional Center to the Mount Olive Correctional Center.

On August 23, 2001, after the circuit court of Randolph County reviewed the two cases—from Logan and Mercer Counties, entered an order consolidating the cases.

On October 25, 2001, the circuit court of Randolph County entered an order stating that the petition for writ of habeas corpus was correctly filed pursuant to *W.Va.Code,* 53–4A–2 (1967), and that appropriate funds should be deducted from the petitioners' accounts to cover the cost of filing fees, pursuant to *W.Va.Code,* 25–1A–3 (2000).[2]

On February 13, 2002, respondent William S. Haines filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies.

1. See *State ex rel. McLaughlin v. Vickers,* 207 W.Va. 405, 533 S.E.2d 38 (2000) for requirements for transferring habeas corpus cases from the originating county to the county of incarceration.

2. Relevant text of the October 25, 2001, order reads as follows:
   . . .
   The Court having reviewed the case file, notes that the Petition was correctly filed pursuant to West Virginia Code § 53–4A–2. It is further noted that this is a petition based upon conditions of confinement. Therefore, pursuant to West Virginia Code § 25–1A–3, it is noted that an invoice was previously completed and

transmitted to the appropriate party at the Huttonsville Correctional Center and the appropriate funds should be deducted from the Petitioners' account in accordance with the West Virginia Code.
   . . .
   It is hereby ORDERED and ADJUDGED, that:
   1. The Petition for Writ of Habeas Corpus was correctly filed without pre-payment of fees, pursuant to West Virginia Code § 25–1A–3.
   2. That an invoice shall be sent to the appropriate party at Huttonsville Correctional Center.
   . . .

Upon review of respondent's motion, the circuit court entered an order giving the petitioners thirty days to provided the court with proof that they had exhausted their administrative remedies as provided in *W.Va.Code*, 25–1A–2 (2000); otherwise, the cases would be dismissed. Only petitioners Cogar and Powell responded to the court.

On March 21, 2002, the circuit court ordered the dismissal of the claims of petitioners Mathena, Sullivan, Few, Grimes, Bennett, Wolf, Powell, *and petitioners* Jason Lawson and Eugene Blake, for failure to exhaust administrative remedies.[3] On April 23, 2002, the circuit court ordered the dismissal of the claims of the remaining petitioner Cogar.

Petitioner Powell protested his dismissal, arguing that because of the nature of the issues in his complaint he did not have to exhaust administrative remedies; however, on review the circuit court, again, dismissed the claims of petitioner Powell on June 17, 2002.

All of the original petitioners' claims were dismissed by the circuit court, *including* the claims of Jason Lawson and Eugene Blake. Only Powell petitioned this Court to reverse

the circuit court's dismissal; his petition for appeal was refused by this Court on July 18, 2003.

Some time later appellant Blake was transferred back to the Huttonsville Correctional Center. After his return Blake sent a letter dated August 10, 2004, to the Randolph County Circuit Clerk questioning the removal of $16.50 from his personal account for filing fees in the now-dismissed habeas corpus case. Appellant Blake included in his letter the following statement: "Hopefully, it will not be necessary for me to flood your office with additional motions and litigations concerning this case."[4]

In response to Blake's letter to the circuit clerk, the circuit court entered an order on August 26, 2004, enjoining appellant Blake from "filing any motions or sending any letters to the Clerk of this Court unless such documents are signed by an attorney licensed to practice law in the State of West Virginia."[5]

Subsequently, appellant Blake, in an apparent attempt not to violate the court's order by sending motions or letters *to the circuit clerk's office*, mailed subsequent fil-

---

3. *See W.Va.Code*, 25–1A–2 (2000).

4. Following is the text of the appellant Blake's August 10, 2004 letter:

    Dear Mr. Riggleman:

    Last week, the Trustee Clerk at the Huttonsville Correctional Center advised me that your Office had just sent an Order to remove sixteen dollars and fifty cents ($16.50) from my personal account for a litigation that had been filed back in the year 2000. The said money was removed from my personal account without any prior notification from your Office, the Court or the Trustee Clerk.

    The question at this point in time, would be to whether or not that case is still an active case on the docket of the Court? If I recall, there were a number of persons listed as petitioners.

    It was my understanding that the case had been dismissed some years back for Failure to Exhaust Administrative Remedies. But since your Office has recently sent an Order to the Trustee Clerk here at Huttonsville for a fee, I've learned that such an act has automatically activated the case, in light of certain other actions pending before the Court.

    Personally speaking, up to the point that your Office sent that Order to the Trustee Clerk, here at Huttonsville Correctional Center to remove money from my personal account, it was my sole desire to *only* complete my prison

sentence and not get involved with any form of legal litigations or seek any form of legal remedy. But the Order has cast shadows upon such thoughts.

    But unfortunately, dispite [sic] these complexities, as the case may be, it is now necessary for your Office to fully advise me of the relative position of this case. Hopefully, it will not be necessary for me to flood your Office with additional motions and litigations concerning this case.

    Thanking you most kindly for all your time and consideration that will now be necessary for your Office to fully up-date me on this legal matter. Hopefully, I shall receive a response within the next ten (10) days. *Again* Thank You.

    Respectfully yours,
    [Eugene Blake]
    Eugene Blake

5. The text of the August 26, 2004 order by the circuit court is as follows:

    On August 11, 2004, a letter from Petitioner, Eugene Blake, was received by the Clerk of this Court. In this letter, the Petitioner addresses the matter of $16.50 being removed from his personal account. The Petitioner further makes an implied threat to the Clerk of this Court, stating, "Hopefully, it will not be necessary for me to flood your Office with

ings directly to the circuit court.[6] In response, the circuit court issued another order dated November 19, 2004, which expanded the earlier August 26 order, enjoining appellant Blake from ". . . any further communications with this court" unless such documents were signed by an attorney licensed to practice law in the State of West Virginia.[7]

In addition to the issues relating to appellant Blake's letters to the circuit clerk and the circuit court, both appellants Lawson and Blake include in their petition for appeal the issues which were included in the underlying conditions and medical care habeas corpus petition.

It is from the August 26 and November 19, 2004 circuit court orders that the appellants appeal.[8]

## II.

### Standard of Review

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review. *See State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975) (findings of facts reviewed by "clearly wrong" standard); *also see Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) (citing *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)) (ultimate decision by abuse of discretion standard; factual findings by clearly erroneous standard; and questions of law subject to a *de novo* review).

## III.

### Discussion

Appellants argue that the circuit court's orders enjoining appellant Blake from filing

---

additional motions and litigations concerning this case."

It is hereby ORDERED and ADJUDGED, that:
1. The letter shall be FILED in Case Number 01–C–39.
2. The fees assessed to the Petitioner were pursuant to this Court's Order entered October 25, 2001, in the above-styled case.
3. Because of his implied threat to "flood" the Clerk's office "with additional motions and litigations concerning this case," Petitioner is further enjoined from filing any motions or sending any letters to the Clerk of this Court unless such documents are signed by an attorney licensed to practice law in the State of West Virginia.

The Clerk shall FORWARD a copy of this Order to the Petitioner, pro se; and to William S. Haines, Warden of Huttonsville Correctional Center. Entered this 26th day of August, 2004.

6. Included in the case file are a Motion for the Appointment of Counsel in Behalf of Petitioner Eugene Blake, a Motion to Certify Action as Class Action and to Certify Petitioners' Subclasses, and corresponding letters of transmittal; all are stamped with a September 22, 2004 date.

7. Following is the complete text of the November 19, 2004, circuit court order:

On August 26, 2004, this Court entered an Order enjoining Petitioner Blake from filing any motions or sending any letters to the Clerk of this Court unless such documents are signed by an attorney licensed to practice law in the State of West Virginia. Subsequently, Petition-

er Blake sent a letter to this Court along with a Motion for the Appointment of Counsel and a Motion to Certify Action as Class Action and to Certify Petitioners' Subclass, within Civil Action No. 01–C–39. The Court notes that Petitioner Blake has a Constitutional right to have access to the court system. However, the Court also notes that he has neither a right to "flood [the] Office with additional motions and litigations concerning this case" nor a right to threaten to "flood the Office with additional motions and litigations concerning this case." In fact, threats to abuse the legal process such as the ones Petitioner Blake has made can result in legal sanctions. Based upon the foregoing, this Court hereby

ORDERS that Petitioners Motions be DENIED. The Court further ORDERS that its Order of August 26, 2004 remain in full force and effect and that the August 26, 2004 Order be expanded to include any further communications with this Court. This Court would advise Petitioner Blake that he may appeal this case should he so desire. The address of the West Virginia Supreme Court of Appeals is: West Virginia Supreme Court of Appeals, 1900 Kanawha Blvd. East, Building 1 Room E–317, Charleston, WV 25305.

The Clerk shall FORWARD a copy of this Order to the Petitioners, pro se; and to William S. Haines, Warden of Huttonsville Correctional Center.

Entered this 18th day of November, 2004.

8. Both appellants Lawson and Blake signed the petition for appeal.

any motions, letters, or communication to the circuit clerk or the circuit court unless the motions, letters, or communications are signed by an attorney violates constitutional standards of guaranteed access to courts and procedural and substantive due process rights.

■ The right of access to our courts is one of the basic and fundamental principles of jurisprudence in West Virginia. We need look no further than our own State's Constitution for guidance. *West Virginia Constitution* art. III, § 17, states as follows:

> The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.

That prisoners have a right to access to courts is axiomatic in our jurisprudence:

> Prisoners have a constitutional right to adequate, effective, and meaningful access to the courts. This right stems from principles of due process and equal protection, as well as from state law. The right is not absolute, however, and reasonable limitations may be imposed to facilitate penal administration and protect the courts from abuse.

72 C.J.S. *Prisons* § 103.

The right of inmate access to courts was discussed in *Hickson v. Kellison,* 170 W.Va. 732, 736, 296 S.E.2d 855, 859 (1982), citing to *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) wherein our Court stated that, "It is clear that from a constitutional standpoint arising out of the Fourteenth Amendment's due process considerations that a right of meaningful access to courts is required."

*Hickson* was a mandamus case in which the plaintiffs, inmates in a county jail, claimed conditions at the jail violated certain constitutional and statutory rights. *Hickson* involved claims of denial of access to courts due to jail official's denial of postage, telephone and access to library materials. In the instant case the issue of access is based upon limitation on the appellant's right to act *pro se* placed upon the appellant by the

circuit court. We believe that the fundamental principle as discussed in *Hickson* is applicable to the facts of this case.

■ Under *West Virginia Constitution* art. III, § 17, prisoners have a Constitutional right to meaningful access to our courts subject to reasonable limitations imposed to protect courts from abuse.

■ While access to courts is a recognized fundamental right, it is also a commonly recognized principle that such right of access is not without limitations. *See* 72 C.J.S. Prisons § 103, *supra.*

■ This Court acknowledged that limitations may be imposed on the right of access to courts in *State ex rel. James v. Hun,* 201 W.Va. 139, 141, 494 S.E.2d 503, 505 (1997), *(per curiam)* wherein we stated that the " . . . right of meaningful [inmate] access to the courts is not completely unfettered." *James* was a mandamus case in which this Court upheld a division of corrections policy of limiting possession of legal documents when challenged as infringing on the right of meaningful access to courts. While the limitations in *James* were institutional limitations, we believe that the same principles apply whether they are imposed by the institution or by judicial authority.

The principle of judicial limitations on the access to courts is illustrated in the case of *Franklin v. Murphy,* 745 F.2d 1221 (9th Cir.1984). In *Franklin,* the inmate by 1980 had filed and paid fees in thirty-seven cases. The lower court granted Franklin an *in forma pauperis* status for the cases, and permitted him to file an additional forty-nine actions. In an effort to curtail filings by Franklin, the lower court ultimately entered an order limiting Franklin to six *in forma pauperis* filing per year. While the Ninth Circuit Court found that six filings per year should be adequate access, the court also stated:

> An order limiting a prisoner's access to the courts must be designed to preserve his right to adequate, effective, and meaningful access, *Bounds,* 430 U.S. at 822, 97 S.Ct. at 1495, while protecting the court from abuse. We agree with the district

court that six free filings per year should be adequate access, but we cannot be certain that it will. If a request is made for the filing of additional cases beyond the number prescribed by the court, Franklin must be afforded an opportunity to make a showing that the limitation to six filings is prejudicial because inclusion of these claims by amendment of his existing claims is not possible. If such a showing is made, the district court must amend its order. This will avoid the constitutionally questionable conclusive presumption that all of Franklin's subsequent submissions are frivolous or malicious.

*Franklin,* 745 F.2d at 1231, 1232.

In *In re Green,* 669 F.2d 779, 215 U.S.App. D.C. 393 (D.C.Cir.1981) (*per curiam*), Green filed between 600 and 700 complaints in federal and state courts in a single decade. Green had been granted *in forma pauperis* status. He was characterized by the court as the "most prolific prisoner litigant in recorded history."

In *Green,* the court's limiting order required Green to pay all filing fees and to post a cash deposit as security for costs. On review, the D.C. appellate court directed the district court to vacate the limiting order, and enter an order requiring that Green not file any civil action without leave of court—forcing a review of prospective filings. Further, the appellate court required that Green certify that the claims he wished to present were new claims never before raised and disposed of on the merits.

The appellate court, citing to *Bounds, supra,* stated that " . . . prisoners have a constitutional right of access to the courts," but that the right of access is neither absolute nor unconditional. *Green,* 669 F.2d at 785, 215 U.S.App.D.C. at 399. The court also observed that the district court's limiting order was not designed to distinguish whether or not each claim was a new non-frivolous claim. Further, the court noted that the limiting order was over-inclusive by requiring Green to pay a filing fee, because if Green was without necessary funds, the limiting order had the effect of denying Green access to the court.

In the instant case, by requiring appellant Blake to have an attorney for *all* filings and correspondence with the court, Blake's *pro se* status becomes much the same as Green's with respect to financial barriers.

Finally, this Court addressed the right of *pro se* representation in *Blair v. Maynard,* 174 W.Va. 247, 324 S.E.2d 391 (1984). In Syllabus Point 1 of *Blair v. Maynard,* 174 W.Va. 247, 324 S.E.2d 391 (1984) we held:

Under *West Virginia Constitution* art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied.

In Syllabus Point 2 of *Blair* we also held:

The fundamental right of self-representation recognized in *West Virginia Constitution* art. III, § 17 may not be denied without a clear showing in the record that the *pro se* litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice.

*Blair* was a civil case being tried by a jury in which the plaintiff was appearing *pro se.* The court declared a mistrial following improper statements by the *pro se* plaintiff. The circuit court informed the plaintiff that the case would be set for a new trial *only after* she had an attorney to assist her. On petition for mandamus this Court reversed, citing to *West Virginia Constitution,* art. III, § 17.

In *Blair* we also stated that:

This Court recognizes that "[t]he proper scope of the court's responsibility [to *pro se* litigants] is necessarily an expression of careful exercise of judicial discretion and cannot be fully described by specific formula." ABA Commission on Standards of Judicial Administration, *Standards Relating to Trial Courts,* § 2.23 Conduct of Cases Where Litigants Appear Without Counsel (Commentary) (1976). Each case presents a wholly different set of circumstances which require careful attention so as to preserve the rights of all parties. Nevertheless, the fundamental right of self-representation recognized in West Vir-

ginia Constitution art. III, § 17 may not be denied without a clear showing in the record that the *pro se* litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice.

*Blair,* 174 W.Va. at 253, 324 S.E.2d at 396.

■ In the instant case, the only factor cited by the circuit court supporting the entry of the order limiting appellant Blake's access to court is the statement in the August 10, 2004 letter that, "Hopefully, it will not be necessary for me to flood your Office with additional motions and litigations concerning this case."

Blake's letter, which was not artfully worded, was trying to determine the legality of the removal of $16.50 from his inmate account. While we believe that Blake's "offending" statement *may* be subject to the interpretation given by the circuit court, it is not the only interpretation which could be made. For example, in frustration of having his institutional account subject to the removal of the $16.50, Blake may have thought it might be necessary to engage in extensive litigation to resolve the matter. We disagree with the circuit court's conclusion that such a statement, standing alone, provides a sufficient basis to conclude that the statement constitutes an implied threat to "abuse the legal process." Furthermore, we believe that an implied threat, without more would not provide a sufficient basis to enter a valid limiting order as discussed *infra.*

■ Considering the record as a whole we cannot say as required by *Blair, supra,* that appellant Blake was engaged in a course of conduct which demonstrated a clear intention to obstruct the administration of justice. Furthermore, drawing from the reasoning in *Bounds, supra, Franklin, supra,* and *Green, supra,* we hold that where a circuit court is faced with a potential abuse of process by a prisoner or a prisoner's threat to abuse the judicial process, the circuit court may, subject to the following, enter an order imposing reasonable limitations on the prisoner's right to access the court. Prior to the entry of

such an order, the circuit court must provide the prisoner an opportunity to show cause why such a limitation should not be imposed. If the record demonstrates a clear intention to obstruct the administration of justice, the circuit court may impose limitations on the prisoner's right of access. Any order limiting a prisoner's access to the courts must be designed to preserve his right to adequate, effective, and meaningful access to our courts. The circuit court's order imposing such a limitation must include such findings of fact and conclusions of law adequate for meaningful appellate review.

Finally, appellants also appealed issues relating to conditions of confinement and medical care that were part of their original habeas corpus petitions. We find that those issues were dismissed as to all appellants earlier by the circuit court, and that only one of the petitioners timely appealed the circuit court's decision on those issues.[9] The dismissal of the original habeas corpus cases, therefore, became final when this Court refused that appeal.

## IV.

### *Conclusion*

Based on the foregoing we affirm, in part, and reverse, in part.

Affirmed, in part, and Reversed, in part.

MAYNARD, Justice, dissenting, in part, and concurring, in part.

(Filed June 28, 2006)

I dissent to the majority's finding that the circuit court erred by entering an order enjoining appellant Eugene Blake from filing any motions, letters, or other communication with the circuit clerk or the circuit court in the underlying action unless such documents were signed by an attorney licensed to practice law in the State of West Virginia. It is clear to me, as it was the circuit court, that appellant Blake was threatening to flood the court with additional motions and paperwork concerning the underlying case which had been dismissed years ago. While Article III,

---

9. We further decline to address the issue of the applicability of *W.Va.Code,* 25-1-8 (1998) to per-

sons incarcerated prior to the adoption of the statute.

Section 17 of the West Virginia Constitution provides that, "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay," the "right of meaningful access to the courts is not completely unfettered." *State ex rel. James v. Hun*, 201 W.Va. 139, 141, 494 S.E.2d 503, 505 (1997). Specifically, it has been recognized that, "an indigent person has no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir.1981).

The threat made by the appellant in this case was a clear abuse of the legal process, and I believe the circuit court was justified in entering orders prohibiting the appellant from filing any additional paperwork in the case without legal representation. Circuit judges have the authority to control and manage their dockets. To do so effectively, judges must have wide discretion to place reasonable restrictions and limitations upon litigants who file non-meritorious claims for malicious reasons, or otherwise abuse the judicial process.

The majority has ignored the reality of frivolous litigation that is constantly being filed by prisoners across this State. In this instance, the appellant was so bold as to actually put his threat to flood the court with paperwork in writing. Instead of allowing circuit judges to curtail what are obviously frivolous filings, the majority has created an open invitation for more abuse of the legal process by jailhouse lawyers who have nothing better to do.

Finally, while I dissent from the majority's decision that the circuit court erred by limiting the appellant's right to self-representation, I concur with the majority's conclusion that the issues in the underlying case concerning the conditions of confinement and medical care were dismissed by the circuit court earlier and that the dismissal became final upon this Court's refusal to hear the appeal in 2003. Clearly, those issues could not be raised again in this appeal.

Therefore, for the reasons set forth above, I dissent, in part, and concur, in part, to the majority's decision in this case.