**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **The Children of:**
**S.U.,**
**Petitioner Below, Petitioner**

**vs.) No. 20-0515** (Mason County 20-D-AP-1)

**C.J.,**
**Respondent Below, Respondent**

**and**

*In re* **The Children of:**
**S.U.,**
**Petitioner Below, Petitioner**

**vs.) No. 20-0516** (Mason County 16-D-233)

**C.J.,**
**Respondent Below, Respondent**

**and**

**S.U.,**
**Petitioner Below, Petitioner**

**vs.) No. 20-0612** (Mason County 20-D-AP-3)

**C.J.,**
**Respondent Below, Respondent**

**and**

**S.U.,**
**Plaintiff Below, Petitioner**

**vs.) No. 20-0710** (Mason County 20-D-AP-6)

**C.J.,**
**Defendant Below, Respondent**

1

**MEMORANDUM DECISION**

Self-represented petitioner S.U.[1] appeals four orders from the Circuit Court of Mason County: an April 9, 2020, order refusing his petition for appeal from the family court; an April 27, 2020, order addressing petitioner's motion for rulings on his remaining appeals and petitions for extraordinary writs; a July 21, 2020, order denying petitioner's second motion for decision on pending appeals and other issues; and an August 26, 2020, order again refusing petitioner's appeal from family court.[2] Respondent C.J. made no appearance before this Court. On appeal, petitioner raises several arguments in an attempt to obtain sole custody of three of his four children with respondent, including that the orders originating from family court are unconstitutional and the family court violated the children's privacy, among other arguments.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This Court has previously issued detailed memorandum decisions concerning the parties' relationship history and the facts surrounding their four children's births. *See S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4, 2019)(memorandum decision); *S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824 (W. Va. Feb. 2, 2021)(memorandum decision). Because of the limited arguments on appeal in the matters currently before the Court, it is unnecessary to belabor these facts. Instead, it is sufficient to stress two important rulings from these matters. The first is that there was never a valid, enforceable gestational surrogacy agreement between petitioner and respondent. *S.U. I*, No. 18-0566, 2019 WL 5692550, at *4 (finding that "all of [petitioner's assignments of error] . . . [w]ere grounded on his contention that [respondent] was nothing more than a gestational surrogate for the parties' three youngest children" and declining

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner previously filed a motion with this Court for consolidation of cases 20-0515, 20-0516, and 20-0612. Finding it in the interest of judicial economy, the Court hereby grants that motion and further determines that case 20-0710 is also appropriate for consolidation along with the other matters.

to disturb the family court's resolution of this issue in respondent's favor). The second is that respondent "is the legal mother of all four children." *Id*. As has become clear through his repeated attacks on respondent's continued exercise of a maternal relationship with, and custody over, the children, petitioner refuses to accept the validity and finality of these determinations.

As the main issues to address in these appeals relate to the family court's cessation of petitioner's visits with the children and limitations on his ability to file pleadings, it is important to outline petitioner's conduct that resulted in these rulings. As early as 2016, the family court ordered that the parties not harass one another. Despite multiple orders to this effect, by 2017 petitioner first engaged in egregious behavior toward respondent. According to the family court, when the children's maternal grandmother passed away, petitioner contacted the local newspaper and the funeral home handling her arrangements to demand that they remove the minor children's names from the maternal grandmother's obituary. Petitioner told both entities that respondent was not related to the children and kidnapped them. Both the newspaper and funeral home informed respondent of the communications they had with petitioner, which caused respondent additional emotional distress at the time of her mother's passing. This was the first of many instances where the family court found petitioner to be in willful and contumacious contempt of a prior order against harassment and that he had the ability to follow the orders but failed to do so. Based on this conduct, the family court issued the first of several requirements that petitioner file a cash bond with the clerk to ensure future compliance with orders. The court also awarded respondent attorney's fees in the amount of $1,500.

Following the family court's entry of the order setting forth custodial responsibility in February of 2018 that was at issue in *S.U. I*, petitioner was found to be in contempt of that order by multiple orders entered in 2018 and 2019. One order reduced petitioner's telephone contact with the children to only one day because of his abuse of the telephonic visits. Moving forward, respondent was required to record petitioner's telephone calls and immediately terminate a call if petitioner behaved inappropriately.

In late 2019, the family court held a hearing on the several competing petitions for contempt from both parties. Based on the evidence, the court found that petitioner "continues to speak to or about [r]espondent in a derogatory and demeaning manner," even going so far as to refer to her as "gestational surrogate" or "kidnapper"; continues to tell the children that respondent is not their mother and refuses to refer to the two youngest children by their legal names; tells the children that respondent prevented them from seeing him and that they would soon be coming home after petitioner's wife adopted them; and continued calling respondent's home on Tuesdays and Thursdays, even though his telephone contact on those nights was terminated, "for purposes of harassment." Importantly, the family court also determined that petitioner's continued behavior proved that he was "determined to undermine [r]espondent as a parent to the minor children" and that he "made no meaningful attempt to address or correct his behavior which is likely to cause irreparable harm to the minor children." According to the court, "it is clear . . . that [p]etitioner does not intend in any way to foster the existing parent-child relationship between [r]espondent and the minor children." Petitioner also failed to enroll and actively participate in counseling services as required by prior orders. The court found that it "would be manifestly harmful to the minor children to continue [p]etitioner's communication with them until [p]etitioner has actively and successfully completed counseling services." As such, the court suspended petitioner's remote

3

visits with the children. In regard to petitioner's requests for contempt against respondent, the family court found that petitioner's allegations were unfounded because respondent only interrupted or terminated petitioner's telephone visitation when petitioner was behaving inappropriately. The family court again found petitioner in contempt, which appears to be approximately the fifth finding of contempt against him by this point in the proceedings. Finally, the court found that petitioner's conduct increased respondent's costs in the litigation, including his faxing to respondent's counsel almost all of petitioner's pleadings "and countless other documents," despite a prior order prohibiting him from doing so. As such, the court awarded respondent attorney's fees in the amount of $5,000 and prohibited petitioner from filing self-represented pleadings. The court again directed that petitioner file certain bonds in order to ensure his compliance with its orders.

The family court then held a hearing in June of 2020 to address additional allegations of contempt against petitioner. In addressing these claims, the family court noted not only the prior prohibition against the parties making derogatory comments about the other in the presence of the children, but also that the parents were prohibited from referring to two of the children by names other than those on their birth certificates. Based on the evidence, the family court found that petitioner violated these directions by e-mailing staff at the Birth to Three program and stating that respondent was only a gestational surrogate, had kidnapped the children, and that the two youngest children's names were names other than their legal names; sending a letter to the principal of the children's elementary school that referred to respondent as a gestational surrogate, stating that petitioner was in the process of terminating her parental rights, and referring to one child by a name other than his legal name; and filing an emergency petition for modification in December of 2019 referring to the youngest children by incorrect names. According to the family court, "[p]etitioner testified that he has 'freedom of speech and rights' and that it is irrelevant to him if [r]espondent feels she is being harassed." The court found that petitioner's behavior continued to prove that he was determined to undermine respondent as a parent and harass her by contacting and making inappropriate statements to school officials and healthcare providers for the children, as this conduct was ongoing since the inception of the case in 2016. Accordingly, the family court found that petitioner was in willful and contumacious contempt and had the ability to comply with the orders but refused. The court then awarded respondent attorney's fees in the amount of $5,000. The court also suspended petitioner's ability to access the children's medical, education, and juvenile records pursuant to West Virginia Code § 48-9-601 until such time as he successfully completed counseling services with a licensed professional to address the issues identified in his psychological evaluation as harmful to the children, his unwillingness to work with respondent as a parent, and his tendency to objectify and completely disregard respondent's bond with and role as a parent to the minor children. The court also required petitioner to post a bond in the amount of $2,000 to ensure his future compliance with orders.

At various points in the proceedings, petitioner filed several different petitions for appeal to the circuit court from the family court's orders. In his various appeals, petitioner raised issues such as the family court's lack of jurisdiction and violations of his constitutional rights, among other claims. Petitioner also filed several motions in the circuit court seeking decisions on pending matters. On April 9, 2020, the circuit court issued an order denying one of petitioner's appeals. The court then issued an "Order Regarding Remaining Appeals and Petitions for Writ" on April 27, 2020. The order concerned several of petitioner's outstanding requests, although central to its

ruling was that it had repeatedly found that the family court did have jurisdiction over the matter. Because all of petitioner's grounds were based on an alleged lack of jurisdiction, the circuit court found that he failed to set forth a viable basis for appeal. Further, the court found that petitioner's due process rights were not violated because he was present at the hearing when the family court ordered him to pay the fine for contempt and set forth the timeframe in which payment was to be made. In its July 21, 2020, "Order Denying Second Motion for Decision on Pending Appeals; Denying Motion to Set Hearing on Pending Appeal; and Refusing Petition for Appeal," the circuit court concluded that there were simply no further outstanding pleadings that required rulings and denied petitioner's motion, in part, as moot. The circuit court further refused petitioner's pending petition for appeal. Finally, in its August 26, 2020, order, the circuit court refused petitioner's final appeal. It is from the various orders of the circuit court that petitioner appeals.

We have previously set forth the following:

> "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl., *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

Central to all of the matters currently on appeal is petitioner's assertion that respondent is a third-party gestational surrogate, a claim that this Court rejected in *S.U. I* and continues to reject in petitioner's subsequent appeals from matters related to his ongoing efforts to divest respondent of her parental rights to the children. As we discussed in *S.U. I*, the family court found that no valid, enforceable gestational surrogacy agreement existed, and we upheld this finding on appeal. *S.U. I*, No. 18-0566, 2019 WL 5692550, at *4. Contrary to petitioner's arguments in that matter and in all of his subsequent appeals, the record showed that petitioner and respondent were in a relationship for twelve years and gave birth to four children in that time, albeit by alternative methods. *Id.* at *1. In his current appeals, petitioner makes extended arguments that his constitutional rights have been violated by the family court's decision to elevate the rights of a gestational surrogate above the rights of the natural parent. It is unnecessary to address these arguments, however, because the bedrock upon which they are constructed is fatally flawed. Petitioner must recognize that respondent is the children's mother, as we have repeatedly stressed, and this Court will continue to refuse to entertain any arguments based on his assertion that she is simply a gestational surrogate, an assertion that lacks an evidentiary basis in any record before this Court. Having found that the vast majority of petitioner's arguments on appeal lack merit, we turn now to the remaining issues that require discussion.

First, petitioner argues that the family court's alteration of his visitation was in retaliation for his exercise of his constitutional right to free speech. Again, it is difficult to divorce petitioner's arguments on this issue from his erroneous arguments concerning respondent's maternal status, as petitioner claims that respondent has no rights regarding his children and that he should be permitted to tell the children that she is a gestational surrogate and that their names are different

5

from those on their birth certificates. What petitioner fails to recognize, however, is that this Court has upheld limited regulation of speech in the context of family court proceedings involving children. As we have explained,

> First Amendment freedoms are not absolute; they must be "'applied in light of the special characteristics of the [relevant] environment.'" *United States v. Brown*, 218 F.3d 415, 424 (5th Cir. 2000) (quoting *Tinker v. Des Moines Indep. Cty. Sch. Dist.*, 393 U.S. 503 (1969)). Thus, even though "'litigants do not "surrender their First Amendment rights at the courthouse door," those rights may be subordinated to other interests that arise' in the context of . . . trials." *Brown*, 218 F.3d at 424 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n.18 (1984)). Courts have recognized that our "[f]reedom of speech does not include freedom to convey messages when, where, and how one chooses. That right must be adjusted to the rights of others." *Yates v. Commonwealth*, 753 S.W.2d 874, 876 (Ky.App.1988) (citing *Breard v. Alexandria*, 341 U.S. 622 (1951)). Accordingly, various kinds of communication are subject to regulation or outright preclusion by governmental action when they run afoul of established principles of law or policy. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982).

*Mark V.H. v. Delores J.M.*, No. 18-0230, 2019 WL 4257183 at *12 (W. Va. Sept. 9, 2019)(memorandum decision). In *Mark V.H.*, the family court restricted the father's access to court records because of his "history of discussing his domestic case on-line" in an effort to "attack [the mother] and her [new] husband," which ultimately harmed the parties' child. In upholding this order, this Court found that "the family court narrowly tailored its order to protect the parties' minor child from embarrassment and to protect respondent from harassment and intimidation." *Id*. Because of that, the Court found no violation of the petitioner's First Amendment rights. *Id.* (citing *Wedding v. Harmon*, 492 S.W.3d 150 (Ky. Ct. App. 2016) (order prohibiting ex-husband from sending co-parenting e-mails to third parties did not violate ex-husband's right to free speech); *In re Marriage of Olson*, 850 P.2d 527 (Wash. Ct. App. 1993) (prohibiting ex-husband from making disparaging remarks about ex-wife to children did not violate First Amendment); *Schutz v. Schutz*, 581 So. 2d 1290 (Fla. 1991) (compelling ex-wife to encourage and nurture the relationship between the child and the noncustodial ex-husband parent did not violate right to free speech)).

On appeal to this Court, petitioner ignores his most egregious efforts to humiliate, harass, and embarrass respondent, including his communications with a funeral home and newspaper following the children's maternal grandmother's death in which petitioner claimed respondent kidnapped the children and he threatened to sue both entities if the children's names were not removed from respondent's mother's obituary. Further, the family court permitted petitioner to continue exercising visits with the children if he followed simple conditions. Multiple times petitioner demonstrated that he could not follow these minimal directions. Based on petitioner's conduct, the family court found that he was determined to undermine respondent's relationship with the children and that he refused to seek required counseling in order to correct his harmful behavior. As such, it is clear that the circuit court did not err in imposing limited restrictions on petitioner's speech, including requirements that he not accuse respondent of kidnapping or otherwise undermine her relationship with the children, and did not err in altering his visitation

with the children when he demonstrated a willful refusal to conform his conduct to the court's orders. Therefore, he is entitled to no relief.

Next, petitioner argues that the family court violated his access to the court in order to seek redress. Specifically, petitioner argues that requiring prepayment and/or the hiring of an attorney before he files pleadings denies the review of all claims and is "clumsily overinclusive." According to petitioner, the family court lacked authority to impose continuing cost requirements on him because his claims were filed in good faith and in accordance with the direction of the local clerk and the Rules of Civil Procedure. Upon our review, we find petitioner's arguments to be without merit.

We have previously explained that such restrictions can be necessary when litigants proceed in bad faith:

> Free access to courts is a principle predicated on the erroneous assumption that both litigants in all lawsuits have a good faith dispute. Often this is not the case, and where it is not, the mischief must be discouraged. Courts are available free of charge, so they are overused. Their overuse in turn congests the docket, resulting in justice-defying delays. In a court system burdened, even compromised, by congestion and delay we need to be particularly sensitive to mischievous overuse of the courts. Litigation designed simply to impede a party seeking payment of an obligation, spiteful and vexatious suits—these simply do not belong in court. . . .

> Everyone who has a good faith dispute requiring a decision by an impartial arbiter is entitled to his day in court. On the other hand, every person is not entitled to his day in court regardless of the frivolous nature of the suit. Parties whose interest in the legal process is to oppress or cheat others should be discouraged.

*Mark V.H.*, 2019 WL 4257183 at *13 (quoting *Nelson v. W. Va. Pub. Emp. Ins. Bd.*, 171 W. Va. 445, 453-54, 300 S.E.2d 86, 95 (1982)); s*ee also, Mathena v. Haines*, 219 W. Va. 417, 422, 633 S.E.2d 771, 776 (2006) ("While access to courts is a recognized fundamental right, it is also a commonly recognized principle that such right of access is not without limitations."); *State ex rel. James v. Hun*, 201 W. Va. 139, 141, 494 S.E.2d 503, 505 (1997) (The "right of meaningful access to the courts is not completely unfettered.").

The Court has also explained that this is the case in many other jurisdictions:

> Numerous states have adopted statutes or rules that permit restrictions on litigants who have been determined to be vexatious—that is, "persons who persistently and habitually file lawsuits without reasonable grounds, or who otherwise engage in frivolous conduct in the courts." Robin Miller, "Validity, Construction, and Application of State Vexatious Litigant Statutes," 45 A.L.R.6th 493 (2009). While this Court has not adopted a vexatious litigant rule, other courts routinely levy sanctions or fashion remedies to preclude the filing of frivolous and repetitious proceedings. *See, e.g., In re Vey*, 520 U.S. 303, 304 (1997) (precluding Supreme Court Clerk from accepting further in forma pauperis filings "[i]n light of [pro se

petitioner's] history of frivolous, repetitive filings[.]"); *Washington v. Alaimo*, 934 F. Supp. 1395, 1397 (S.D. Ga. 1996) (pro se litigant's access to courts could be limited because he "lacks the ability or will to govern his suits with the civility and order required by . . . the Federal Rules of Civil Procedure. He has wasted the time of many an innocent party and he has flippantly used the resources of the judiciary with his abusive motions filing practice."); *Rudnicki v. McCormack*, 210 F. Supp. 905, 909 (D.R.I. 1962) ("I have determined that the time has come when it is necessary and appropriate that an injunction issue, both for protection of these and other public officials against unwarranted harassment, and for the protection of the records of this and other courts against the filing of frivolous and unimportant papers."); *In re Prefiling Order Declaring Vexatious Litigant, Pursuant to I.C.A.R. 59*, 164 Idaho 586, 434 P.3d 190 (2019) (upholding restrictions on litigant who filed numerous frivolous pro se actions and frivolous pleadings); *DeNardo v. Cutler*, 167 P.3d 674, 681 (Alaska 2007) ("[T]he courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process . . . . The courts may take creative actions to discourage hyperactive litigators so long as some access to courts is allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis." (Quoting 42 Am.Jur.2d Injunctions § 191 (electronic edition, updated May 2006)); *Kondrat v. Byron*, 63 Ohio App. 3d 495, 496, 579 N.E.2d 287, 287 (1989) (permanently enjoining litigant from filing future pro se cases without first meeting stringent conditions); *Eismann v. Miller*, 101 Idaho 692, 697, 619 P.2d 1145, 1150 (1980) (Exercise of the right to access to the courts "cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process. To allow one individual, untrained in the law, to incessantly seek a forum for his views both legal and secular by means of pro se litigation against virtually every public official or private citizen who disagrees with him only serves to debilitate the entire system of justice."); *Bd. of Cty. Comm'rs of Boulder Cty. v. Barday*, 197 Colo. 519, 522, 594 P.2d 1057, 1059 (1979) ("[T]he right of access to courts does not include the right to impede the normal functioning of judicial processes. Nor does it include the right to abuse judicial processes in order to harass others.").

*Mark V.H.*, 2019 WL 4257183 at *14. As outlined above, petitioner continues to file numerous pleadings against respondent in an attempt to divest her of her parental rights to the children—an issue that this Court squarely resolved in *S.U. I*. Moreover, petitioner has demonstrated a willful refusal to follow the family court's basic directions and, as a result, has been held in contempt at least six times. This includes petitioner's refusal to cease faxing voluminous documents to respondent's counsel and other conduct that has unnecessarily increased respondent's legal fees. As such, we find no error in the family court placing reasonable restrictions on petitioner's ability to file pleadings or other self-represented documents.

Finally, petitioner argues that the family court abused its discretion in unsealing the case and ordering that it be fully released in the public forum of a circuit court. According to the record, respondent moved to unseal the record because petitioner filed a cause of action in the Circuit Court of Harrison County that "includes allegations that involve and/or directly reference records,

testimony, rulings and evidence entered into the record" in the family court matter. Petitioner argues that the family court erred in failing to identify specific documents to be unsealed and, instead, simply stated that the circuit court be permitted to examine and/or copy "the items listed above." This argument, however, is entirely without merit. First, petitioner's argument is one of semantics that cannot entitle him to relief. Contrary to his assertion that the circuit court did not list any items, the order is clear that "the items listed above" include "records, testimony, rulings and evidence." That this encompasses a broad range of documents only reflects the fact that petitioner, yet again, raised many of the same issues against respondent in yet another jurisdiction, thereby necessitating the circuit court's comprehensive review of the records in the family court matter. This is in keeping with Rule 6(c) of the West Virginia Rules of Practice and Procedure for Family Courts, which provides that "[u]pon written motion, for good cause shown, the court may enter an order permitting a person . . . to examine and/or copy documents in a file." There is simply no basis for petitioner's argument that a circuit court judge ruling on petitioner's cause of action that implicates evidence and records from this family court proceeding was precluded from viewing the entire case file. As such, he is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 9, 2020; April 27, 2020; July 21, 2020; and August 26, 2020, orders are hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

9