STATE OF WEST VIRGINIA

**David Jones, Petitioner**

**vs) No. 12-0563** (Hancock County 09-P-49)

**Debra Minnix, Warden, Respondent**

**FILED**

May 24, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner David Jones, by counsel D. Adrian Hoosier II, appeals the January 31, 2012 order of the Circuit Court of Hancock County denying his petition for writ of habeas corpus. Respondent Minnix, by counsel Marland L. Turner, has filed a response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2006, petitioner was indicted on the following four criminal counts: driving under the influence of controlled substances with minors; two counts of child neglect creating a substantial risk of injury; and driving under the influence of a controlled substance, second offense. Petitioner was tried, by a jury, in August of 2006 and was convicted of two counts of child neglect creating a substantial risk of injury and driving under the influence of a controlled substance. Petitioner was sentenced to two consecutive terms of one to ten years of incarceration for the convictions of child neglect creating substantial risk of injury, and to a concurrent term of one year in jail for the lone count of driving under the influence of a controlled substance. Following his conviction, petitioner filed a direct appeal with this Court, which was refused by order entered on June 27, 2007. Petitioner then filed a petition for writ of habeas corpus in the circuit court and an omnibus hearing was held on September 26, 2011. The circuit court denied petitioner habeas relief by order entered on January 31, 2012.

On appeal, petitioner alleges three assignments of error. First, he alleges that it was error to deny his petition for writ of habeas corpus, because the circuit court gave little weight or consideration to the ample evidence concerning his innocence, including evidence allegedly explaining his erratic driving pattern at the time of his arrest. According to petitioner, his trial counsel was ineffective in failing to introduce records supporting his assertion that glass from a recently broken windshield was blown into his eye, and the circuit court erred in discounting the repair and medical records introduced at the omnibus hearing. In his second assignment of error, petitioner alleges that the circuit court erred in failing to include findings of fact and conclusions of law as to petitioner's allegation of ineffective assistance of counsel in its order denying him habeas relief, in violation of Rule 4(c) of the West Virginia Rules Governing Post-Conviction

Habeas Corpus Proceedings. Third, petitioner also alleges that the circuit court failed to include findings of fact and conclusions of law in regard to its denial of habeas relief in light of substantial evidence introduced during the omnibus hearing that proves his innocence. This assignment of error also focuses on the introduction of repair and medical records that petitioner used to explain his erratic driving pattern at the time of his arrest.

This Court has previously held that

[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). After careful consideration of the parties' arguments, this Court concludes that the circuit court did not abuse its discretion in denying the petition for writ of habeas corpus. In regard to petitioner's second and third assignments of error, a review of the order shows that petitioner's arguments lack merit. The circuit court clearly addressed all of petitioner's claims regarding alleged ineffective assistance of counsel and also addressed the evidence which allegedly proves petitioner's innocence. For these reasons, the Court finds no error in regard to the circuit court's findings of fact or conclusions of law. Having reviewed the circuit court's "Order" entered on January 31, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we find no error in the decision of the circuit court and its January 31, 2012, order denying the petition for writ of habeas corpus is affirmed.

Affirmed.

**ISSUED:** May 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

*120563* *2nd Review*
RECEIVED

# IN THE CIRCUIT COURT OF HANCOCK COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.,
DAVID B. JONES,

Petitioner,

v.

JIM IELAPI, Warden,

Respondent.

CIVIL ACTION NO. 09-P-49
Original Criminal Case No. 06-F-11

January 31, 2012

Entered In Civil Misc. Book
No. 21 Page 20

Clerk of said Court

## ORDER

On September 26, 2011, an evidentiary hearing was held on the Petitioner's Amended Petition for Writ of Habeas Corpus and the State's Motion to Dismiss the Petition. The Petitioner, David B. Jones, was present in person and by his counsel, D. Adrian Hoosier, II, Esq. The Respondent was represented by Marcy J. Grishkevich, Esq., Hancock County Assistant Prosecuting Attorney. After considering all of the pleadings, testimony, arguments, and pertinent legal authorities, the Court is prepared to issue a decision as set forth below.

## *PROCEDURAL HISTORY*

The Petitioner, David B. Jones, was originally indicted on January 11, 2006 in Hancock County Circuit Court, Case No. 06-F-11. In that indictment, he was named in four (4) counts wherein he was charged with the offenses of: driving under the influence of controlled substances with minors; two (2) counts of child neglect creating a substantial risk of injury; and driving under the influence of a controlled substance, second offense.

Petitioner's trial counsel filed an omnibus discovery motion as well as a motion to suppress illegally seized evidence. In particular, the Petitioner attempted to suppress the blood evidence arguing

that this evidence was illegally obtained through coercion. A hearing was held on the motion to suppress which was denied by the Court. A one day trial was held on August 31, 2006. Prior to the commencement of the trial, the Petitioner stipulated to having a prior driving under the influence conviction in 1997 so that the jury would not be advised of the same at trial. Subsequently, the Petitioner was convicted of two (2) counts of child neglect creating a substantial risk of injury and driving under the influence of a controlled substance.

Prior to sentencing, the Petitioner filed a motion for alternative sentence and a motion for new trial. The Court denied both motions and imposed a sentence of imprisonment upon the Petitioner. The Petitioner filed an appeal which was refused by the Supreme Court of Appeals. Thereafter, the Petitioner filed his petition for habeas corpus relief. In addition, the Petitioner has previously filed motions for reduction of sentence which were denied.

## FACTUAL HISTORY

On or about September 26, 2006, a 911 call was made by Tracy Thomas who stated that she observed the Petitioner driving erratically in New Cumberland, Hancock County, West Virginia in the area of Route 2. Tracy Thomas, a schoolteacher, stated that she observed the Petitioner's vehicle veer back and forth on the road. She thought the driver may have fallen asleep. Deputy Arthur L. Watson, Jr. responded to the 911 call. Afterwards, Deputy Watson encountered the Petitioner's vehicle and observed the vehicle cross the center line of the road a few times. Then, the deputy initiated an investigatory stop. After the Petitioner's vehicle was stopped, the deputy observed the Petitioner with glassy eyes and sensed that the Petitioner seemed confused. The Petitioner's minor children, ages eight (8) and ten (10), were passengers in the vehicle en route to school. The Petitioner was asked to exit his vehicle so the deputy could administer field sobriety tests to the Petitioner. As the Petitioner exited the vehicle, the deputy noticed that the Petitioner was unsteady. Subsequently, the deputy administered

2

three (3) field sobriety tests to the Petitioner: horizontal gaze nystagmus, one leg stand and Preliminary Breath Test (PBT). Although the Petitioner advised the deputy that he had a back injury, the deputy still wanted to give him the opportunity to take the test. According to the deputy, the Petitioner failed the horizontal gaze nystagmus and one leg stand tests; but registered a 0.000 on the PBT.

Thereafter, the Petitioner was placed under arrest for DUI. As a result of the PBT test registering 0.000, the deputy made the decision to take the Petitioner to the local hospital for a blood test. The Petitioner signed a written consent to allow for the blood to be withdrawn. The results of the blood test reflected the presence of Meprobamate and Carisoprodol (i.e., Soma). The Petitioner testified that he ingested Soma after he was arrested and prior to having his blood withdrawn at the hospital.

## STANDARD OF REVIEW AND PERTINENT LEGAL AUTHORITIES

(1) "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

(2) "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus Point 6, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

(3) "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syllabus Point 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

(4) "There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either wilfully or inadvertently; and (3) the evidence must have been material, *i.e.*, it

3

must have prejudiced the defense at trial." Syllabus Point 2, *State v. Youngblood,* 221 W.Va. 20, 650 S.E.2d 119 (2007).

(5) "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syllabus Point 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

(6) One who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence. Syllabus Point 22, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

(7) A trial court lacks jurisdiction to enter a valid judgment of conviction against an accused who was denied effective assistance of counsel and a judgment so entered is void. Syllabus Point 25, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

(8) "A habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syllabus Point 4, *State ex rel. McMannis v. Mohn,* 163 W.Va. 129, 254 S.E.2d 805 (1979).

(9) W.Va. Code § 17C-5-2 (j), states : "Any person who: (1) Drives a vehicle in this state while he or she: (A) Is under the influence of alcohol; (B) Is under the influence of any controlled substance; (C) Is under the influence of any other drug; (D) Is under the combined influence of alcohol and any controlled substance or any other drug; or (E) Has an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight; and (2) The person while driving has on or within the motor vehicle one or more other persons who are unemancipated minors who have not reached their sixteenth birthday is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not less than two days nor more than twelve months, which jail term is to include actual confinement of not less than forty-eight hours and shall be fined not less than $200 nor more than $1,000."

(10) "A criminal statute must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." Syllabus Point 1, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974).

(11) "Criminal statutes, which do not impinge upon First Amendment freedoms or other similarly sensitive constitutional rights, are tested for certainty and definiteness by construing the statute in light of the conduct to which it is applied." Syllabus Point 3, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974).

(12) "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syllabus Point 4, *State v. Flinn,* 158 W.Va. 111, 208 S.E.2d 538 (1974).

4

(13)     "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute," Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

(14)     "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syllabus Point 1, *Ohio County Commission v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983).

(15)     "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syllabus Point 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

(16)     "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syllabus Point 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

(17)     "When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." Syllabus Point 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

(18)     West Virginia Code Section 53-4A-1 (a) states: "Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the constitution of the United States or the constitution of this state, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this state, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the

5

same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence. Any such petition shall be filed with the clerk of the supreme court of appeals, or the clerk of any circuit court, said supreme court of appeals and all circuit courts of this state having been granted original jurisdiction in habeas corpus cases by the constitution of this state, or with the clerk of any court of record of limited jurisdiction having criminal jurisdiction in this state. Jurisdiction is hereby conferred upon each and every such court of record of limited jurisdiction having criminal jurisdiction (hereinafter for convenience of reference referred to simply as a "statutory court") to refuse or grant writs of habeas corpus ad subjiciendum in accordance with the provisions of this article and to hear and determine any contention or contentions and to pass upon all grounds in fact or law relied upon in support thereof in any proceeding on any such writ made returnable thereto in accordance with the provisions of this article. All proceedings in accordance with this article shall be civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case."

## FINDINGS OF FACT AND DISCUSSION

### A. *State's Motion to Dismiss Petition*

The State argues that the petition for a writ of habeas corpus must be dismissed because the Petitioner is no longer incarcerated within the meaning of West Virginia Code Section 53-4A-1 et seq. as he is currently on parole, and thus, the Petitioner has no standing. In opposition, the Petitioner contends that there is no binding authority to deny the Petitioner standing simply because he is not incarcerated.

West Virginia Code Section 53-4A-1 (a) states: "Any person convicted of a crime and incarcerated under sentence of imprisonment...." As of date, the Supreme Court of Appeals has not decided whether a writ of habeas corpus can be issued when a petitioner is on parole or probation. *See, State v. Megan S.*, 671 S.E.2d 734 (W.Va. 2008); *Kemp v. State*, 506 S.E.2d 38 (W.Va. 1997). However, both of these cases acknowledge that many state and federal courts have determined that parole and probation is a sufficient restriction of freedom to warrant a writ to be issued. *Id.* This Court finds that the Petitioner is currently on parole and being on parole is a sufficient restriction of freedom

6

to permit the Petitioner to proceed on his petition. Accordingly, the Court finds that the Petitioner has standing to continue in the prosecution of his petition for a writ of habeas corpus.

### B. *Petitioner's Contentions in Support of Amended Petition for Writ of Habeas Corpus*

The Petitioner sets forth several grounds in support of his Amended Petition for Writ of Habeas Corpus. The Court will address each of these grounds herein below.

#### (1) *Ineffective assistance of counsel*

**(a)** *Petitioner contends that his trial counsel was ineffective by stipulating to the State's expert witness's qualifications without voir dire of the expert and without properly limiting the areas of testimony agreed upon;*

**(b)** *Petitioner's counsel was ineffective for failing to object to the State's witness testimony regarding the pharmacological effects of Soma; and*

**(c)** *Petitioner's counsel was ineffective when he failed to move for a mistrial after the chemist's testimony.*

Trial counsel, Robert Twitty, stipulated at trial that Lt. Timothy G. White is a forensic chemist for the West Virginia State Police and can render opinions based on his training and the testing that he conducted in this case. At trial, Lt. White testified that he used an instrument on the drug screen named an EMIT and also used a gas-chromatograph spectrometer to identify any drugs. He determined from the testing that the submitted blood of the Petitioner contained 2.54 milligrams per one hundred milliliters of Meprobamate and 0.5 milligrams per one hundred milliliters Carisoprodol (i.e., Soma). He stated that according to the literature and reference material, Soma is a muscle relaxant that causes dizziness. Lt. White opined that a side effect of Soma is a lack of coordination and even a coma at high doses. He further opined that the levels of Meprobamate and Carisoprodol (i.e., Soma) contained in the Petitioner's blood were in the therapeutic level or range at that concentration. According to Lt. White, it

7

would give the desired pharmacology effects. Lt. White stated that the therapeutic levels for Soma is 1 milligram percent to a 4 milligram percent while the toxic level is from 3 to a 5 milligram percent. Lt. White testified that the therapeutic and toxic levels overlap and the Petitioner's level was close to the toxic level. It should be noted that Mr. Twitty's closing argument reveals that he relied on Lt. White's opinion as to the Petitioner's blood level for Soma being at the therapeutic level so he could argue to the jury that the Petitioner was not intoxicated. However, during rebuttal, the assistant prosecuting attorney counters by arguing that the Petitioner was at the upper level of the range between therapeutic and toxic.

The record clearly reflects that Mr. Twitty did not voir dire Lt. White; did not object to the testimony of Lt. White regarding the pharmacological effects of Soma; and did not move for a mistrial after the chemist's testimony. Forensic chemistry can be defined as the chemical analysis and identification of certain physical evidence (e.g., drugs and alcohol). On the other hand, toxicology is the study of the adverse effects that a substance might have on the human body. While it may appear on its face that Lt. White, as a forensic chemist, may have given an opinion beyond his field of expertise, the allowance of the same by trial counsel was not that egregious. Lt. White's opinion as to the side effects of Soma was based upon literature and reference material he reviewed. An examination of the record, in particular trial counsel's closing argument, suggests that it was the strategy of trial counsel to use Lt. White's opinion to argue to the jury that the Petitioner was not under the influence of a controlled substance as the Petitioner's blood level for Soma was at the therapeutic level.

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a

8

reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. Syllabus Point 6, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). Based upon the events discussed above, the Court finds that trial counsel's election to stipulate to the qualifications of Lt. White, not to object to Lt. White's opinion regarding the pharmacological effects of Soma, and not to move for a mistrial, were strategic decisions. Therefore, trial counsel's performance was not deficient under an objective standard of reasonableness.

(d) *Petitioner's counsel was ineffective when he failed to make specific requests for the videotape evidence.*

Petitioner contends that his trial counsel failed to make specific discovery request for videotape evidence, particularly of the events captured on the jail camera at the Hancock County Sheriff's Department on the evening of the Petitioner's arrest. Petitioner contends that the jail camera should have captured him taking medication at the Hancock County Sheriff's Department. The Petitioner acknowledges that trial counsel filed an omnibus discovery motion but argues that this motion failed to deal with any videotape evidence. According to the testimony of trial counsel, he would normally request a copy of the videotape. A close examination of the omnibus discovery motion reflects that he did include a request to inspect and copy documents and tangible objects as provided for under W. Va. R. Crim. P. 16(a)(1)(C). The Court is of the opinion that a videotape would be included under W. Va. R. Crim. P. 16(a) (1) (C).

As this Court has determined that trial counsel did make a request for the disclosure of a videotape, the Court must now determine if in fact a videotape did exist, and if so, why was it not disclosed by the State. At the omnibus evidentiary hearing, Detective Arthur L. Watson, Jr. testified there was no video [camera] in his unmarked cruiser when he stopped the Petitioner's vehicle. As to the jail camera, trial counsel testified that there were no cameras at the jail in the area where people are confined as it basically shows the hallway area. Although not raised specifically by the Petitioner, a

9

review of the current record supports that no constitutional due process violation was committed by the State under *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) and *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982). Accordingly, this Court cannot find a factual basis to support this ground. Accordingly, counsel's performance was not deficient under an objective standard of reasonableness.

(e) *Petitioner's counsel was ineffective when he failed to subpoena records regarding: the repairs of the Petitioner's windshield and the Petitioner's medical records.*

According to the Petitioner, trial counsel was ineffective by failing to subpoena the records of the repair shop to substantiate that his windshield was previously broken. In addition, the petitioner claims that trial counsel was ineffective by failing to introduce the Petitioner's medical records at trial to explain.

Regarding the windshield documents, the Petitioner testified at trial that the windshield on his vehicle was previously shattered, and that the debris (from the shattered windshield) blew in his face after he turned on the defrost. Also, the Petitioner's father testified at trial that his son (Petitioner) was not intoxicated on the date in question.

A review of the petitioner's medical records reflects that the Petitioner did not complain of any medical problems when he was at the hospital to have his blood withdrawn on September 26, 2005. Subsequently, on October 8, 2005, the Petitioner went to the hospital complaining that his eyes were "burning" for about a week to 10 days. The hospital record for October 8, 2005 indicates that he had small flecks of glass on his face but no evidence of foreign body in his eyes. In addition, Mr. Twitty's testimony at the evidentiary hearing suggests that the reason he did not introduce these documents was because he had the Petitioner testify to the pertinent information contained in the documents in question. The Court does not believe that these medical records are especially probative in support of the Petitioner's contention.

10

Although the better practice may have been for trial counsel to introduce these documents at trial to corroborate the testimony of the Petitioner and his father, the failure to do so was not outcome-determinative. Thus, the Court finds that this contention (the failure to subpoena the repair and medical records), per se, does not rise to the level of a violation of a constitutional right. Therefore, trial counsel's performance was not deficient under an objective standard of reasonableness.

(f) *Petitioner's counsel was ineffective in failing to address the issue of therapeutic levels of Soma with Petitioner's expert.*

The Petitioner contends that trial counsel did an inept undertaking of preparing the petitioner's expert witness, Lawson Bernstein, M.D., for his testimony at trial. At the evidentiary hearing, Mr. Twitty testified that he retained the services of Dr. Bernstein to provide an opinion that the Petitioner was not intoxicated and that the medication taken by the Petitioner was not beyond the therapeutic level. Despite Mr. Twitty's sound intentions, this particular opinion was not elicited from Dr. Bernstein at trial. The crux of Dr. Bernstein's testimony was that Soma is a muscle relaxant which has a very quick onset of action.

At trial, the Petitioner testified that he took Soma after he was arrested because of the pain he was experiencing from muscle spasms. One can infer that trial counsel's decision to elicit an opinion that Soma has a very quick onset of action was necessary to explain why the Petitioner's Soma level was somewhat elevated. Although the expert's testimony did not bolster the Petitioner's position that he was not intoxicated, it did however assist the Petitioner's implied theory of defense that it takes a short period of time for the levels of Soma to become noticeable after ingestion.

Assuming *arguendo* that Dr. Bernstein did opine at trial as to the therapeutic levels of Soma, it would not have been a pivotal factor. A review of an opinion letter dated August 4, 2006 from Dr. Bernstein to Mr. Twitty indicates that the Petitioner suffered from an episode of involuntary intoxication

11

and that the medication taken by the Petitioner was in the upper limit of normal for therapeutic levels, but at the lower limit for toxic levels.

Consequently, the opinion of Dr. Bernstein, as to the therapeutic levels of the medication taken by the Petitioner, is analogous to the opinion of Lt. White. As a result, it is the Court's opinion that trial counsel's failure to address the therapeutic levels of Soma with Dr. Bernstein did not undermine the outcome of the trial. Therefore, this Court finds that trial counsel's performance was not deficient under an objective standard of reasonableness.

## 2. *Statute under which conviction was obtained is unconstitutional as it applies to the Petitioner*

Petitioner contends that the DUI statute is unconstitutional as it applies to the Petitioner. He argues that there was never a determination of a substance [Soma] reaching an intoxicating measure, and thus, his due process right was violated. The statute in question, W.Va. Code § 17C-5-2 (j), states : "Any person who: (1) Drives a vehicle in this state while he or she: (A) Is under the influence of alcohol; (B) Is under the influence of any controlled substance; (C) Is under the influence of any other drug; (D) Is under the combined influence of alcohol and any controlled substance or any other drug; or (E) Has an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight; and (2) The person while driving has on or within the motor vehicle one or more other persons who are unemancipated minors who have not reached their sixteenth birthday is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not less than two days nor more than twelve months, which jail term is to include actual confinement of not less than forty-eight hours and shall be fined not less than $200 nor more than $1,000." When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment. Syllabus Point 4, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974). When a statute is

12

clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute. Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

W.Va. Code § 17C-5-2 (j) is obviously a criminal statute. As such, it "must be set out with sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and to provide adequate standards for adjudication." *See*, Syllabus Point 1, *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974). On its face, W.Va. Code § 17C-5-2 (j) is clear and unambiguous as it sets forth the legislative intent to deter individuals from driving under the influence of a controlled substance or other drug. Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent. Syllabus Point 1, *Ohio County Commission v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983). Because the statute in question is unambiguous, judicial interpretation of this statute is not necessary. For this reason, W.Va. Code § 17C-5-2 (j) has sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is prohibited by statute and provides adequate standards for adjudication. Consequently, the Court finds that W.Va. Code § 17C-5-2 (j) is constitutional.

### 3. Refusal to subpoena witnesses

It is the Petitioner's contention that he was denied the right to call his own expert witness at trial to challenge the findings and opinion of the State's expert as to his state of alleged intoxication. The Court believes that this contention coincides with the Petitioner's previous argument that trial counsel was ineffective in failing to address the issue of therapeutic levels of Soma with Petitioner's expert. Although the testimony of the expert witness was not presented to the jury in the manner desired by the

13

Petitioner, the Court finds that this contention (refusal to subpoena witnesses), per se, does not rise to the level of a violation of a constitutional right as the Petitioner did present an expert witness at trial.

### 4. Sufficiency of evidence

The Petitioner contends that there was insufficient evidence to convict him of the State charges. In viewing the evidence in the light most favorable to the prosecution and giving credit to all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, a review of all the underlying cases . shows there was sufficient evidence to convict the Petitioner.

There are several significant facts to support this finding. For instance, Tracy Thomas observed the Petitioner driving erratically by observing the Petitioner's vehicle veer back and forth on the road. She thought the driver may have fallen asleep. Deputy Watson testified at trial that he observed the Petitioner's vehicle cross the center line of the road a few times. After the Petitioner's vehicle was stopped, he observed the Petitioner with glassy eyes and sensed that the Petitioner seemed confused. He also observed the Petitioner's two daughters, ages eight (8) and ten (10), as passengers in the vehicle. As the Petitioner exited the vehicle, the deputy noticed that the Petitioner was unsteady. Subsequently, the deputy administered field sobriety tests to the Petitioner, wherein he failed two (2) of the tests according to the deputy. In addition, as discussed above, there was testimony from Lt. White that the submitted blood of the Petitioner contained 2.54 milligrams per one hundred milliliters of Meprobamate and 0.5 milligrams per one hundred milliliters Carisoprodol (i.e., Soma). He testified that Soma is a muscle relaxant which causes dizziness according to his research. Also, he was of the opinion that a side effect of Soma is a lack of coordination and even a coma at high doses. Thus, the Court finds that there was sufficient evidence for a jury to convict the Petitioner.

## CONCLUSIONS OF LAW

1. The Petitioner has standing to prosecute his petition for writ of habeas corpus.

2. Any Grounds for Post-Conviction Habeas Corpus Relief, not raised by the Petitioner herein, are deemed WAIVED and are therefore DENIED.

3. There was insufficient evidence presented that the Petitioner received ineffective assistance of counsel.

4. W.Va. Code § 17C-5-2 (j) is constitutional.

5. The alleged refusal to subpoena witnesses was not a violation of a constitutional right in this case.

6. There was sufficient evidence to convict the Petitioner.

WHEREFORE, it is **ORDERED**, **ADJUDGED**, and **DECREED** that the Petitioner's Amended Petition for Writ of Habeas Corpus is hereby **DENIED** for the reasons set forth above.

The Clerk of the Circuit Court shall forward attested copies of this Order to counsel of record.

ENTERED this 31 day of Jan, 2012.

_____
CIRCUIT COURT JUDGE

A TRUE COPY
Attests
_Brenda L Jackson_
Clerk, Circuit Court, Hancock County

_____
Deputy

15