# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Larry A. Clement,**
**Petitioner Below, Petitioner**

**FILED**

November 3, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-1173** (Fayette County 10-C-63)

**David Ballard, Warden,**
**Mount Olive Correctional Complex**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Larry A. Clement, by counsel D. Adrian Hoosier, II, appeals the order of the Circuit Court of Fayette County, entered September 27, 2013, that denied his petition for post-conviction habeas corpus relief. Respondent David Ballard, Warden, by counsel Laura Young, filed a response in support of the circuit court's order, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In his underlying criminal case, petitioner was indicted on May 8, 2007, on sixteen counts of sexual assault in the second degree in violation of West Virginia Code § 61-8B-4; thirty-two counts of sexual abuse in the second degree in violation of West Virginia Code § 61-8B-7(a)(1); thirty-two counts of sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8B-5; and sixteen counts of sexual assault in the first degree in violation of West Virginia Code § 61-8B-3. The crimes occurred between September of 2005 and December of 2006. Petitioner's victims, A.C.H. and A.S.H.,[1] were the minor granddaughters of the woman petitioner had lived with for many years. The children, who—at the time of petitioner's crimes—were about thirteen and ten years old, visited frequently with petitioner and their grandmother and often spent the night at the couple's home.

Early in 2007, petitioner retained Charles B. Mullins II[2] to serve as his defense counsel. Petitioner's jury trial commenced on January 28, 2008. During trial, both child victims testified.

---

[1] Consistent with our practice in cases involving sensitive matters, we use the child victims' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); *see also* W.Va. R. App. P. 40(e)(1).

[2] Mr. Mullins was disbarred on October 17, 2011, well after petitioner's January of 2008 trial.

1

A.C.H. was then sixteen years old and A.S.H. was thirteen. Each child testified that, when their grandmother was asleep or on the computer in another room, petitioner would grab her breasts or place his hand down her pants and rub her vagina. Each girl also testified that petitioner had, on a few occasions, inserted his finger or the tip of his finger into her vagina. The children's father testified that petitioner had lived with the children's grandmother for years, and that he (the father) had trusted petitioner to look after the children when they were at petitioner's house. The State presented no physical evidence of the abuse, but did present the testimony of the counselor who had treated the children. At the close of the State's case-in-chief, Mr. Mullins moved the trial court for a judgment of acquittal. In response, the trial court noted that the question would be whether petitioner had been the children's custodian. The trial court then said that the State's evidence was sufficient for the matter to go to the jury and denied the motion. At the close of petitioner's case, the trial court denied Mr. Mullins's renewed motion for a judgment of acquittal. Thereafter, the jury found petitioner guilty on all ninety-six counts of the indictment.

On February 8, 2008, petitioner filed a motion for a new trial in which he argued, inter alia, that the trial court improperly excluded the defense from playing the recordings of the child victims' forensic interviews. The trial court denied the motion on the ground that the victims' trial testimony was not contradictory to the victims' recorded testimony and, therefore, it was not necessary to admit the recording to impeach the victims' testimony.

Petitioner was sentenced on March 20, 2008, to a term of not less than fifty-one nor more than one hundred and seventy-five years in prison.

This Court denied petitioner's direct appeal on September 9, 2009.

On March 9, 2010, petitioner filed a pro se petition for writ of habeas corpus in the Circuit Court of Fayette County. The next day, the habeas court appointed the West Virginia Public Defender Services ("WVPDS") as petitioner's counsel. Thereafter, the WVPDS filed a motion for the appointment of D. Adrian Hoosier, II as co-habeas counsel. Mr. Hoosier filed an amended habeas petition on petitioner's behalf on February 13, 2012. Thereafter, Mr. Hoosier filed a supplemental amended petition. Petitioner also filed his own supplemental petition. Contained within these various petitions was the claim that petitioner's trial counsel had been ineffective.

The habeas court held various evidentiary hearings on the matter. At one such hearing, on November 15, 2011, Mr. Mullins testified as follows: He began practicing law in 1988. About 85% of his practice was in the field of criminal law and he had handled about twenty sexual assault cases. He had represented 2,000 to 3,000 defendants and taken 100 to 125 cases to a jury verdict. He believed petitioner's case should be tried on the issue of witness credibility given that there was no DNA evidence and no neutral corroborating witness. He attempted plea negotiations, but the State offered petitioner nothing less than life in prison. At trial, the children were coherent and non-emotional witnesses. His strategy was to get the children off the stand as quickly as possible, which he did. He engaged an expert witness, a psychologist, who testified at petitioner's trial that the victims' statements, made during their forensic interviews, seem rehearsed and may have been coached. He did not retain a medical expert because years had passed between the date of the children's disclosure and trial, and the children claimed only

2

occasional fingertip penetration. Thus, whether the girls' hymens were intact was irrelevant. In regard to whether petitioner was the children's custodian, he stated that the evidence at trial showed that A.C.H. and A.S.H. had an on-going relationship with petitioner, petitioner had supervised them and kept them safe, and he purchased the food that the children ate at his house. He also noted that the jury was instructed on the statutory definition of "custodian." He conferred with petitioner throughout the case and told petitioner they were fighting an uphill battle.

In its September 27, 2013, order denying habeas relief, the circuit court found that Mr. Mullins's "trial strategy and his performance at trial were well within 'the broad ranges of professionally competent assistance.'" The circuit court then dismissed petitioner's various habeas petitions with prejudice—with one exception: the circuit court amended petitioner's sentencing and commitment order so that it reflected the statutory sentence in effect at the time petitioner committed the crimes at issue in this case.

Petitioner now appeals the circuit court's September 27, 2013, order. We apply the following standard of review in such cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 418, 633 S.E.2d 771, 772 (2006).

On appeal, petitioner raises four assignments of error, all of which claim that petitioner's trial counsel rendered ineffective assistance of counsel. We have said,

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We have also said,

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *id.*

3

Petitioner's first assignment of error is that the habeas court erred in failing to find that Mr. Mullins was ineffective as petitioner's trial counsel because he failed to retain an expert to rebut the testimony of petitioner's alleged sexual acts.

We find this assignment of error, at best, disingenuous. The record on appeal shows that Mr. Mullins did retain an expert (1) to review the statements made by the child victims in this case, and (2) to testify at petitioner's trial. Petitioner acknowledged this fact in his pro se petition for habeas relief, in which he said,

> Petitioner hired Dr. David Clayman, a qualified clinical . . . psychologist to review the criminal reports, statements[,] audio and video tapes[,] and FMRS records from two (2) allege [sic] victims. He was further ask [sic] to use his skills and expertise to review the said information and determine any comments he had regarding the accuracy of the interview, whether there was any coaching and other suggestive techniques.

> Dr. Clayman testified that after reviewing the allege [sic] victim's [sic] video tape [sic], he found some coaching, lack of detail as to what happen [sic]. The victim's [sic] stories were the same and seem [sic] rehearsed.

Further, at petitioner's omnibus hearing, Mr. Mullins confirmed that he had hired an expert on petitioner's behalf when he testified as follows:

**Mr. Mullins**: . . . but I recall that we did in some capacity retain a David—I think this is correct—David Claymore. . . . And Dr. Claymore is, in my opinion, one of the leading authorities in the State of West Virginia on sexual abuse and sexual assault-type crimes. And I showed a note where we had delivered some records to Dr. Claymore for him to do an evaluation, and we were seeking a couple of opinions from Dr.—

**The State**: Your Honor, I don't mean to interrupt, but for the record, it's Dr. David Clayman.

**Mr. Mullins**: Clayman, I'm sorry. He is correct, Your Honor.

**The Court**: Alright.

**Mr. Mullins**: But in any event, Dr. Clayman, we were seeking two opinions from him. One . . . whether he could offer light as to whether he believed the forensic interviews . . . cast doubt on the credibility and reliability of those statements. The doctor would not offer such an opinion, but the doctor was prepared, and I believe did testify, that he offered an opinion that the procedures, the way that the interviews were taken—and one of his big concerns . . . . And so I guess that's a long-winded answer to your question, but we did employ Dr. Clayman in some capacity. . . . I had used Dr. Clayman numerous times before and had a prior

4

relationship with him. In fact, my paralegal and I drove to Charleston and spent about a half a day with the doctor discussing those issues.

Petitioner also argues that Mr. Mullins was ineffective because he failed to hire a *medical* expert to testify at his trial. As we noted above, during Mr. Mullins's testimony at petitioner's omnibus hearing, Mr. Mullins stated that he did not retain a medical expert because years had passed between the date of the children's disclosure and petitioner's trial, and the children claimed only occasional fingertip penetration. Thus, whether the girls' hymens were intact would not have provided any relevant information in this case. The habeas court considered petitioner's claim regarding a medical expert in light of Mr. Mullins's testimony and found that this assignment of error had no merit. We agree. The State entered no physical or medical evidence at petitioner's trial. Therefore, there was no such evidence to contest. Further, Mr. Mullins did hire a relevant expert who examined the evidence in the case and testified at petitioner's trial. On this record, we cannot say that the circuit court erred in finding that Mr. Mullins's performance was not ineffective in regard to the hiring of experts on petitioner's behalf.

Petitioner's second assignment of error is that the habeas court erred in finding that Mr. Mullins was not ineffective where he failed to challenge the jury's finding that petitioner had served as the children's custodian. Specifically, petitioner claims that Mr. Mullins was ineffective because he failed to move the trial court to dismiss the thirty-two counts of his indictment charging sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8D-5.

West Virginia Code § 61-8D-5(a) provides that,

[i]f any . . . custodian of or other person in a position of trust in relation to a child under his or her care, custody, or control, shall engage in . . . sexual intrusion or sexual contact with a child under his or her care, custody or control, . . . then such . . . custodian or person in a position of trust shall be guilty of a felony. . . .

West Virginia Code § 61-8D-1(4) defines a "custodian" as

a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding. "Custodian" shall also include, but not be limited to, the spouse of a parent, guardian or custodian, or a person cohabiting with a parent, guardian or custodian in the relationship of husband and wife, where such spouse or other person shares actual physical possession or care and custody of a child with the parent, guardian or custodian.

(Emphasis added.)

The question regarding whether petitioner was the victims' "custodian" pursuant to West Virginia Code § 61-8D-1(4) was a question of fact for the jury, and not a legal question to be decided by the trial court. With regard to petitioner's "custodian" status, the State presented

5

evidence to the jury that (1) petitioner had cohabited for years with the children's grandmother, (2) petitioner had an ongoing relationship with the children, (3) the children were frequently in petitioner's home and in his presence while their grandmother was asleep or occupied elsewhere, (4) the children's father expected petitioner to watch over the children when they were in petitioner's home, (5) the children's mother expected petitioner to keep the children safe while they were with him, and (6) petitioner ensured that the children were fed while they were with him. At the close of evidence, the trial court instructed the jury on the legal definition of "custodian." Thereafter, the jury found that petitioner had, in fact, served as the child victims' custodian.

Based on this record, we cannot say that the habeas court erred in finding that (1) Mr. Mullins performance on this issue was not deficient under an objective standard of reasonableness, and (2) if Mr. Mullins had moved to dismiss the counts of petitioner's indictment based West Virginia Code § 61-8D-5, there was no reasonable probability that the motion would have been granted by the trial court.

Petitioner's third assignment of error is that the habeas court erred in finding that Mr. Mullins was not ineffective where Mr. Mullins failed to object to the trial court's denial of petitioner's motion to admit the recordings of the child victims' January 8, 2007, forensic interviews or the transcripts of those recordings into evidence at petitioner's trial. Petitioner claims that if the recordings or a transcript of the same had been entered into evidence, the jury would have seen that the children's statements were coached or rehearsed just as Dr. Clayman opined at trial. The habeas court found that the trial court properly excluded those recordings because the child victims' testimony was consistent with their recorded statements and, thus, there was no need to use the recordings to impeach the victims. Further, Mr. Mullins cross-examined both victims and, during the defense's case, entered Dr. Clayman's expert opinion regarding the victims' statements. Therefore, we concur with the habeas court's conclusion that even if petitioner's trial counsel had erred in failing to object to the circuit court's denial of the exclusion of the recordings, such error would have had no impact on the outcome of petitioner's trial.

Petitioner's fourth and final assignment of error is that the habeas court erred in failing to find that Mr. Mullins was ineffective due to his many errors at trial. Specifically, petitioner claims that Mr. Mullins (1) failed to object to the State's contention that digital penetration of a vagina would not leave any physical damage despite the fact that the State laid no foundation for this contention; (2) failed to object to jury instructions; (3) failed to offer instructions of lesser included offenses; (4) failed to object to inflammatory statements made by the prosecution during closing argument; (5) failed to call impeachment witnesses; (6) failed to subpoena "the victim's" medical records; (7) failed to call school personnel to discredit "the victim"; (8) failed to properly prepare a witness who testified regarding petitioner's prior bad acts; and (9) failed to request cautionary instructions.

6

In contravention of Rule 10(c)(7)[3] of the West Virginia Rules of Appellate Procedure, petitioner's argument contains no citations to the appendix record showing when or how any of these alleged errors occurred at trial. Further, petitioner does not argue, or even speculate, how these alleged acts constituted ineffective assistance of counsel or prejudiced his case. We have said,

> "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" (*quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Furthermore, this Court has adhered to the rule that "[a]lthough we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but [] not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996).

*State v. Kaufman*, 227 W.Va. 537, 555 n.39, in part, 711 S.E.2d 607, 625 n.39, in part (2011). Thus, we decline to address petitioner's cumulative error argument as it was not properly developed on appeal.

For the foregoing reasons, we affirm the habeas court's lengthy and extraordinarily thorough order.

Affirmed.

**ISSUED:** November 3, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

---

[3] Rule of Appellate Procedure 10(c)(7), regarding appeal briefs to this Court, requires that such briefs

> contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain . . . appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.