## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Aaron Nelson,**
**Petitioner Below, Petitioner**

**FILED**

June 26, 2015
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 14-0598** (Mingo County 14-C-56)

**David Ballard, Warden, Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Aaron Nelson, appearing *pro se*, appeals the May 28, 2014, order of the Circuit Court of Mingo County that denied his second petition for a writ of habeas corpus. Respondent warden, by counsel David A. Stackpole, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The facts regarding petitioner's underlying criminal case are these: The naked body of Wanda Lesher was found in a shallow grave; there was a shoestring around her neck and her hands were bound behind her back. The medical examiner determined the cause of death to be multiple blunt force injuries of the head, torso and back, as well as ligature strangulation and drowning. The victim's burned car was found in another location. The West Virginia State Police received information from several people that Alfred Dingess, Jr. had stated that he was involved in the murder. State Troopers took a statement from Mr. Dingess, in which he admitted to the murder and implicated petitioner in the kidnapping, sexual assault, and murder of the victim. Police also received information that Zandell Bryant was involved in the crimes. Mr. Dingess later implicated two of petitioner's brothers, David Nelson and Clinty Nelson, as also being involved in the crime.

The crimes occurred late in the evening of August 31, through the early morning of September 1, 2002. On the night of August 31, 2002, petitioner, Mr. Dingess, and Doug Sparks were at a bar. Mr. Sparks testified that petitioner left the bar with Mr. Dingess and the victim. Mr. Dingess told police that the killing occurred at a cemetery, where police later found a 2x4 board with the victim's blood and a cigarette butt containing Mr. Dingess' DNA. Mr. Dingess told police that the victim's blood had landed on petitioner's clothing during the killing. When police arrested petitioner on Sept. 2, 2002, there was blood on petitioner's clothing, but it turned out to be his own blood—not that of the victim. When police first contacted petitioner, petitioner immediately stated that "I didn't do anything to that girl." Mr. Dingess testified that the victim was petitioner's ex-girlfriend, but petitioner denies this. Although petitioner did not testify at trial, he asserts that he

1

had nothing to do with the victim's murder. For the pre-sentence investigation report, petitioner stated that Mr. Dingess had obtained a ride for them from "some girl he had met," the victim and Mr. Dingess dropped petitioner off, and that was the last petitioner saw of them.

Mr. Dingess accepted a plea agreement, which provided that he would be eligible for parole after serving fifteen years in prison if he testified against petitioner at petitioner's trial, which he did. Petitioner was convicted of first degree murder pursuant to West Virginia Code § 61-2-1 and kidnaping pursuant to West Virginia Code § 61-2-14a. The jury did not recommend mercy for either conviction. Petitioner was also convicted of first degree sexual assault pursuant to West Virginia Code § 61-8B-3.[1] On November 10, 2004, petitioner was sentenced to two life terms without the possibility of parole and to a term of fifteen to twenty-five years in prison, all sentences to run consecutively.

Petitioner appealed his convictions to this Court making the following assignments of error: (1) the State's evidence was insufficient to support the petitioner's convictions (in raising this issue, petitioner also argued that Mr. Dingess was not a credible witness); (2) petitioner was denied his rights to a fair trial and to due process of law; (3) the circuit court abused its discretion by permitting the prosecution to introduce into evidence pictures of the victim not long after her death; and (4) trial counsel provided petitioner ineffective assistance by not advising him to testify in his own defense.[2] This Court refused the appeal on June 5, 2006.

Petitioner raised these same issues in his first habeas petition filed on June 19, 2006.[3] The circuit court appointed petitioner habeas counsel and afforded him an omnibus habeas corpus hearing, at which petitioner and other witnesses testified. Following that hearing, the circuit court denied the petition on October 23, 2009. Petitioner appealed, which this Court refused on May 5, 2010.

On April 8, 2014, petitioner filed his second petition for writ of habeas corpus alleging that (1) the trial judge and the prosecutor each committed misconduct in his case; and (2) habeas counsel was ineffective because counsel refused to make allegations against the judge and the prosecutor. The circuit court rejected petitioner's claims because (1) petitioner's allegations of judicial and prosecutorial misconduct were waived and/or could have been adjudicated in the prior habeas proceeding if those issues had been raised at that time; and (2) the record showed no evidence that habeas counsel was ineffective. Accordingly, the circuit court denied the petition.

---

[1] Petitioner's brothers, David Nelson and Clinty Nelson, as well as Zandell Bryant were also convicted of offenses related to the victim's death.

[2] A different attorney served as petitioner's appellate counsel.

[3] The only difference between petitioner's direct appeal and his first habeas proceeding is that in the latter, he expanded his claim of ineffective assistance of counsel to include additional allegations including that trial counsel did not have a license to practice law at the time of the trial. *See* fn. 5 *infra.*

Petitioner now appeals the circuit court's May 28, 2014, order denying his habeas petition. We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 418, 633 S.E.2d 771, 772 (2006). In addition, in Syllabus Point 2 of *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606, 608 (1981), this Court held as follows:

> A judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law which have been fully and finally litigated and decided, and as to issues which with reasonable diligence should have been known but were not raised, and this occurs where there has been an omnibus habeas corpus hearing at which the applicant for habeas corpus was represented by counsel or appeared *pro se* having knowingly and intelligently waived his right to counsel.

On appeal, petitioner attempts to avoid the application of the doctrine of res judicata by arguing that the trial judge's and the prosecutor's recent convictions on federal criminal charges[4] constituted newly discovered evidence that allowed him to file a subsequent habeas petition. *See* Syl. Pt. 4, *Losh*, 166 W.Va. at 762-63, 277 S.E.2d at 608. Respondent warden counters that the trial judge's and the prosecutor's federal convictions arose out of events totally unrelated to petitioner's case. Respondent warden further asserts that petitioner's allegations with regard to his case—that, prior to trial, the judge went to the crime scene and conducted his own investigation and that the prosecutor conspired with the judge to shield witness Doug Sparks, whom petitioner claims was related to the prosecutor, from scrutiny—have no support whatsoever in the record.[5] From our review of the record on appeal, we agree with respondent warden that petitioner's allegations do

---

[4] Former Mingo County Circuit Court Judge Michael Thornsbury was adjudged guilty of one count of conspiracy against civil rights in violation of 18 U.S.C. § 241, pursuant to a plea agreement, and sentenced to fifty months in federal prison by the United States District Court for the Southern District of West Virginia ("district court") by order entered on June 19, 2014, in No. 2:13-cr-00239. Former Mingo County Prosecuting Attorney C. Michael Sparks was adjudged guilty of one count of deprivation of rights under color law in violation of 18 U.S.C. § 242, pursuant to a plea agreement, and sentenced to twelve months in federal prison by the district court by order entered on July 14, 2014, in No. 2:13-cr-00264.

[5] For example, petitioner alleges that Mr. Dingess set about to inculpate others in the crimes in order to lessen his own culpability. Yet, while it is undisputed that Mr. Sparks was at the bar with petitioner and Mr. Dingess on the night in question, there is no evidence—and petitioner never alleges—that Mr. Dingess attempted to inculpate Mr. Sparks.

3

not constitute newly discovered evidence sufficient to avoid the application of the doctrine of res judicata and conclude that the circuit court did not err in determining that petitioner could have raised his claims against the judge and the prosecutor in his initial habeas proceeding.

With regard to petitioner's claim that habeas counsel was ineffective because counsel refused to make allegations against the judge and the prosecutor,[6] respondent warden argues that an attorney may decline to raise issues that lack evidentiary support. The circuit court found that the record showed no evidence supporting petitioner's ineffective assistance claim. We determine that the circuit court's finding in that regard was not clearly erroneous and conclude that the circuit court did not abuse its discretion in denying petitioner's habeas petition.[7]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 26, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[6] In Syllabus Point 4 of *Losh*, we held that a subsequent petition alleging ineffective assistance of counsel in the prior habeas proceeding is also an exception to the doctrine of res judicata. 166 W.Va. at 762-63, 277 S.E.2d at 608.

[7] On appeal, petitioner also claims ineffective assistance of trial counsel because counsel made a motion to withdraw, which was denied. In making this claim, petitioner persists in alleging that counsel did not have a license to practice law at the time of trial. Respondent warden counters that this is patently false because, while the proceeding that ultimately led to the annulment of counsel's law license began before petitioner's trial, the annulment did not occur until January of 2006—well after the conclusion of the trial. In his reply brief, petitioner asserts that habeas counsel was ineffective by not raising the annulment of trial counsel's law license in his first post-conviction proceeding. We find this allegation is likewise false because the circuit court's October 23, 2009, order from the first habeas proceeding clearly reflects that petitioner testified that he believed at the time of trial that there was already a problem with counsel's law license. In that order, the circuit court found that petitioner did not prove his allegations with regard to trial counsel, and while petitioner appealed that determination, this Court refused petitioner's appeal on May 5, 2010. Therefore, we agree with respondent warden that the issue of trial counsel's alleged ineffectiveness was previously and finally adjudicated in the first habeas proceeding and that the doctrine of res judicata bars petitioner from re-raising it now.

4