# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Rajion Alterek Mayo,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0340** (Cabell County 18-C-351)

**Shelby Searls, Superintendent,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

# MEMORANDUM DECISION

Petitioner Rajion Alterek Mayo, by counsel Eric B. Anderson, appeals the March 11, 2020, order of the Circuit Court of Cabell County denying his second petition for a writ of habeas corpus. Respondent Shelby Searls, Superintendent, Huttonsville Correctional Center, by counsel Lara K. Bissett, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was born on April 30, 1992. On March 30, 2010, petitioner and another juvenile, J.M., approached a couple at Ritter Park in Huntington, West Virginia, and "pulled a weapon on the guy." Petitioner and J.M. robbed the man of $27 and left the scene. Subsequently, after petitioner's eighteenth birthday, he fired a weapon into a vehicle during an attempted robbery on July 26, 2010. An individual was struck and died from the injury. With regard to the March 30, 2010, incident, petitioner was initially charged in juvenile court. The State filed a petition to transfer petitioner to adult court. The circuit court held a hearing on the transfer petition on October 14, 2010. The circuit court granted the petition to transfer petitioner to adult court.

1

On February 17, 2011, a Cabell County grand jury indicted petitioner for attempted first-degree robbery of the woman and first-degree robbery of the man, as to the March 30, 2010, incident, and indicted him for murder "during the commission of a [f]irst [d]egree [r]obbery," as to the July 26, 2010, incident. On September 16, 2011, petitioner and the State entered into a plea agreement. Pursuant to the agreement, the State dismissed the first-degree murder and attempted first-degree robbery counts of the indictment. In exchange, petitioner agreed to plead guilty to second-degree murder (charged by information) and to the first-degree robbery count of the indictment. The parties agreed that the State could argue for a forty-year sentence for second-degree murder and that petitioner could argue for a twenty-year sentence for that offense. Furthermore, the State agreed to recommend no more than a twenty-year sentence for first-degree robbery and that petitioner could argue for concurrent sentencing. At a September 16, 2011, hearing, the circuit court accepted the plea agreement and petitioner's guilty pleas to second-degree murder and first-degree robbery. By sentencing order entered on December 15, 2011, the circuit court imposed thirty years of incarceration for second-degree murder and twenty years of incarceration for first-degree robbery, to be served consecutively.

On January 26, 2012, petitioner filed a motion for reduction of sentence. The circuit court denied the motion on June 4, 2013. On July 26, 2013, petitioner filed a second motion for reduction of sentence and a motion for appointment of counsel. The circuit court denied those motions on September 5, 2013, finding that the request for reduction of sentence was untimely filed pursuant to Rule 35(b) of the West Virginia Rules of Criminal Procedure, but further that "no circumstances have changed since [petitioner]'s sentencing." Petitioner appealed the September 5, 2013, order in *State v. Mayo* ("*Mayo I*"), No. 13-1003, 2014 WL 6634229 (W. Va. Nov. 24, 2014) (memorandum decision). This Court affirmed the denial of the motion for reduction of sentence, finding that petitioner's sentence for first-degree robbery was not unconstitutionally disproportionate to the offense. *Id.* at *2-3.

On February 26, 2015, petitioner filed a petition for a writ of habeas corpus in the circuit court. Petitioner was appointed habeas counsel ("first habeas counsel") who filed an amended habeas petition on January 19, 2016. In the amended habeas petition, petitioner alleged that his sentence for first-degree robbery was unconstitutionally disproportionate to the less severe sentence imposed on his co-defendant, J.M., whose case proceeded in the juvenile delinquency system. At a May 12, 2016, omnibus hearing, first habeas counsel reviewed the *Losh* checklist filed in the case with petitioner.[1] First habeas counsel asked petitioner if the disproportionate sentence claim was the issue "we're here today to ask the Court" to consider, and petitioner answered, "Correct." Thereafter, petitioner testified that he and J.M. had similar juvenile records and that both had previously served sentences of detention. Petitioner stated that it was his belief

---

[1]The checklist of grounds typically used in habeas corpus proceedings, usually referred to as the *Losh* checklist, originates from this Court's decision in *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), where the Court set forth the most common grounds for habeas relief. *See* 166 W. Va. at 768-70, 277 S.E.2d at 611-12.

that J.M. discharged his sentence for first-degree robbery after a year of juvenile detention.[2] At the conclusion of petitioner's direct examination, first habeas counsel asked petitioner if there was any other issue he wanted to raise with the circuit court, stating that "[t]his is your opportunity to assert any . . . errors," that, in petitioner's opinion, "adversely affected your constitutional or statutory rights." Petitioner testified that the hearing at which the circuit court granted the petition to transfer him to adult court "just didn't seem fair to me." First habeas counsel asked, "Is that all you would like to add?" Petitioner answered, "Yes, Sir."

On cross-examination, petitioner confirmed that his juvenile record included two battery charges, a petit larceny charge, and a charge for possession of a controlled substance. Petitioner admitted that his unlawful conduct intensified over time and that his "last crimes were way more severe." By order entered on May 26, 2016, the circuit court denied the first habeas petition, finding that petitioner's sentence for first-degree robbery was neither unconstitutionally disproportionate to the offense nor in relation to any sentence imposed on his juvenile co-defendant. In affirming the May 26, 2016, order in *Mayo v. Terry* ("*Mayo II*"), No. 16-0559, 2018 WL 2277135 (W. Va. May 18, 2018) (memorandum decision), this Court found, in pertinent part, that "any disparity between petitioner's sentence and his codefendant's sentence is attributable to petitioner's transfer to adult court" and that, "[w]hile petitioner testified that the transfer out of the juvenile system prior to his indictment for the murder committed after his eighteenth birthday did not 'seem fair,' he never alleged that the transfer of the first-degree robbery charge to adult court was erroneous." *Id.* at *3.

On June 29, 2018, petitioner filed a second habeas petition in the circuit court, alleging that first habeas counsel was ineffective in *Mayo II*. Petitioner was appointed habeas counsel who filed an amended petition on June 28, 2019, and a second amended habeas petition on September 16, 2019. At a February 3, 2020, evidentiary hearing, petitioner was asked if ineffective assistance of first habeas counsel was "what you want to assert today?" Petitioner answered affirmatively. Thereafter, petitioner presented the testimony of first habeas counsel and his own testimony in an attempt to show that first habeas counsel was ineffective in failing to argue that petitioner's transfer to adult court was erroneous. First habeas counsel testified that he had little recollection of the specific details of petitioner's case. For example, first habeas counsel stated that he could not recall whether he and petitioner had disagreements about the issues that should have been raised in *Mayo II*. First habeas counsel further stated that, if he had such a disagreement with a habeas petitioner, his general practice was to "give them an opportunity to air their grievances in front of the court," but did not "recall that happening in [petitioner's] case." However, as indicated above, at the May 12, 2016, omnibus hearing, first habeas counsel gave petitioner such an opportunity in *Mayo II*, and petitioner stated only that the transfer hearing "just didn't seem fair."

In the instant case, during first habeas counsel's testimony at the February 3, 2020, hearing, petitioner introduced into evidence a November 18, 2015, letter from first habeas counsel to petitioner, stating that (1) the circuit clerk was having difficulty in finding petitioner's

---

[2]Because J.M.'s juvenile record was sealed, the exact nature of J.M.'s sentence was unknown.

juvenile records; (2) first habeas counsel "researched the 'transfer' issue involving [petitioner] and [petitioner's] co-defendant, who was also 17 at the time of the Ritter Park robbery and attempted robbery"; (3) first habeas counsel did not find a precedent "which mandates a finding that the State violated [petitioner's] constitutional or statutory rights by transferring these charges to adult status"; and (4) an "it's not fair" argument was not a viable basis for a habeas claim. Thereafter, petitioner testified that first habeas counsel failed to adequately investigate his claim that his transfer to adult court was erroneous because first habeas counsel did not review the transfer hearing transcript due to a failure to obtain it. By order entered on March 11, 2020, the circuit court denied the second habeas petition, finding that the only issue before the court was "whether . . . [p]etitioner received effective assistance of [c]ounsel" in the habeas proceeding in *Mayo II*. The circuit court further found that first habeas counsel was not ineffective in *Mayo II* pursuant to the *Strickland/Miller* test for evaluating such claims.

Petitioner now appeals the circuit court's March 11, 2020, order denying his second habeas petition. This Court reviews a circuit court order denying a habeas petition under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016). However, because we have before us the denial of petitioner's *second* habeas petition, we must also consider the application of Syllabus Point 4 of *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981): "A prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing[.]"

The test for evaluating an ineffective assistance claim is as follows:

> "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

4

On appeal, petitioner argues that first habeas counsel was ineffective in *Mayo II* and also raises the errors that allegedly occurred at the hearing at which he was transferred to adult court with regard to the first-degree robbery charge.[3] Respondent counters that petitioner may not raise purported errors from the transfer hearing because the circuit court properly found that the only issue before it was the alleged ineffective assistance of first habeas counsel. Respondent further argues that the instant habeas petition is barred by the doctrine of res judicata. We agree with respondent on both points.

While ineffective assistance of habeas counsel constitutes an exception to the doctrine of res judicata, pursuant to Syllabus Point 4 of *Losh*, petitioner had an obligation to raise all issues known to him at the omnibus hearing in *Mayo II*. Based upon our review of the transcript of the evidentiary hearing in the instant case, the transcript of the omnibus hearing in *Mayo II*, and our decision in *Mayo II*, we find that petitioner waived any alleged error during the transfer hearing because, when given the opportunity by first habeas counsel to raise such errors in *Mayo II*, petitioner "never alleged that the transfer of the first-degree robbery charge to adult court was erroneous." 2018 WL 2277135, at \*3. We further find that first habeas counsel's performance was not ineffective under the *Strickland/Miller* test for not raising issues that petitioner waived during his testimony. Therefore, we conclude that the circuit court did not abuse its discretion in denying petitioner's second habeas petition.

For the foregoing reasons, we affirm the circuit court's March 11, 2020, order denying petitioner's second petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** August 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[3]Petitioner argues that first habeas counsel failed to raise the following alleged errors regarding the transfer hearing: (1) the State failed to timely schedule the hearing once it filed the petition to transfer petitioner to adult court; (2) the State failed to prove that petitioner was a juvenile at the time of the first-degree robbery; (3) the circuit court failed to make a careful, detailed analysis and review of petitioner's home and family environment prior to holding the transfer hearing; (4) the circuit court failed to order petitioner to undergo a psychological evaluation prior to the transfer hearing; (5) the State failed to present any evidence of the first-degree murder charge in support of its petition to transfer the first-degree robbery charge to adult court; (6) no party presented testimony as to whether petitioner could be rehabilitated; (7) petitioner did not receive proper notice of the transfer hearing; and (8) petitioner did not receive his right to confront his juvenile codefendant at the transfer hearing.

5